NOAH SMITHERMAN *v.* A. H. SANDERS and others.

Money lent with the knowledge that it is to be used in equipping a military company about to enter the service of the Confederate States, cannot be recovered, the consideration being illegal.

That it was not lent for the express purpose of equipping such company, but merely because the plaintiff had money to lend, is immaterial.

(*Phillips* v. *Hooker*, Phil. Eq. 193, distinguished and approved; *Leak* v. *Commissioners, &c., ante,* 132 ; *Setzer* v. *Commissioners, ante* 516 ; *Martin* v. *McMillan,* 63 N. C., 486, approved.)

DEBT, tried before *Tourgee, J.,* at Spring Term 1870, of RANDOLPH Court.

The plaintiff declared upon a note for $1,000, dated June

SMITHERMAN *v.* SANDERS and others.

21, 1861. The defence was, that the consideration was illegal.

It was shown that the defendants, who were some of the members of Randolph County Court, had met as such at the time that the note was given, for the purpose of raising money to equip a company of volunteers about to go into the military service of the Confederate States; that the plaintiff was present, and knew of their intentions; that application was made to him, to lend the money for such purpose to the County, upon a County bond; that he declined to do this, but agreed to, and did, lend it upon the private bond of the defendants, adding that they might do what they pleased with it. The money was thereupon obtained, and was used in equipping the company.

The defendants asked the Court to charge, (among other things,) that if the plaintiff knew for what purpose the money was borrowed, he could not recover.

His Honor instructed the jury that if the money was advanced on purpose to aid the rebellion, and if this was the object, or a part of the object of the plaintiff, he could not recover; but that if the plaintiff, having money to lend, wished to invest it upon good security, and lent it merely to obtain interest upon his money, then he could recover, although he knew that the defendants intended to use it for equipping a volunteer company to go into the Confederate army.

Verdict for the plaintiff. Judgment accordingly, and Appeal by the defendants.

*Scott & Scott,* and *Mendenhall,* for the appellants.

The conduct of the plaintiff in lending the money, was inconsistent with his duty to the United States: *Leak* v. *Commissioners, &c., ante,* 132; *Worthy* v. *Barrett,* 63 N. C., 199.

*Gorrell, contra.*

In order to vitiate the contract, the unlawful purpose must have been the motive or inducement thereto : *Phillips* v. *Hooker*, Phil. Eq. 193 ; *Armstrong* v. *Toller*, 11 Wheat. 258, Story, Conf. 258 ; *Armfield* v. *Tate*, 7 Ire. 259 ; *Hodgesson* v. *Temple*, 5 Taunt. 181 ; *Dater* v. *Earl*, 3 Gray, (Mass.) 482 ; *Holeman* v. *Johns*, Cowp. 341 ; *Martin* v. *McMillan*, 63 N. C., 486 ; *Rindon* v. *Taber*, 11 How. 493.

PEARSON, C. J. This case is stronger than the Salt cases : *Leak* v. *Com'rs. Richmond, ante,* 132 ; *Setzer* v. *Com'rs. Catawba, ante* 516 *;* for here the plaintiff actually furished money to equip rebel soldiers. So the act *per se* aided the rebellion, and amounted as much to treason against the government of the United States, as if he had furnished arms, or volunteered as a soldier. The fact that he declined to take a County bond, and required a bond executed by the Justices individually, is a subterfuge too flimsy to shield him from the consequences of his act. The legal effect was, he furnished the money to the County, taking the bond sued on as collateral security. If these defendants are compelled to pay the debt, of course they will expect to have recourse upon the county, and the transaction is the same as if he had looked to the county in the first instance. So, all of the persons concerned are *in pari delicto*, and the Courts of the rightful government will not interfere in favor of any of them, but leave the matter as it stands.

The notion that the plaintiff furnished the money for the sake of investing in an interest-paying bond, with no concern as to what was done with it, is another subterfuge ; for, as we have said, the act of itself aided the rebellion, and was an offence against the government. This is the principle of the decision in *Martin* v. *McMillan*, 63 N. C., 486. There, the fact of furnishing horses for the Confederate army, was an

act which of itself aided the rebellion, and amounted to treason. That was the ground of the decision, and the fact that the plaintiff said he was taking less than the value, for the sake of *the cause,* was merely a circumstance in aggravation. Here, the plaintiff does an act in aid of the rebellion, and has not the magnanimity to declare in favor of the side he was directly aiding, but tries to leave a hole at which he hopes to be able to creep out in case of danger.

Without a particular review of the ruling of his Honor, it is enough to say that it is not in accordance with *Martin* v. *McMillan, sup.,* the principle of which case governs this. His Honor ought to have charged, that if the plaintiff furnished the money, knowing it was to be used to equip rebel soldiers, the fact that he refused to take a county bond, and insisted upon having the bond of individuals, did not vary the case, and he could not recover; and the fact that he furnished the money for the sake of making an investment on interest, without being influenced by his knowledge of the purposes for which it was to be used, (provided the evidence presented the point,) did not vary the case, and still he could not recover for the act of furnishing the money with a knowledge that it was to be used to equip rebel soldiers, was of itself an act which aided the rebellion, and amounted to treason.

A, knowing that B intends instantly to shoot C, sells B. a loaded gun,—B kills C with the gun,—A is guilty of murder, and cannot be heard to say that he sold the gun for the sake of the price ; for he was present, and knowingly aided and enabled B to commit the crime. His motive is not relevant to the inquiry ; from the act itself, the law implies malice, and a wanton disregard of human life. Where the act of selling goods, or lending money, with the knowledge that the goods or money are to be put to an illegal use, does not, of itself, amount to a criminal offence—as selling goods knowing they are to be smuggled, or spirits, knowing it is to

be retailed without a license, the motive is material; and it is necessary to show that the illegal use was the motive and inducement for the selling or lending. Of this class is *Phillips* v. *Hooker*, Phil. Eq. 193, and the cases cited. It is there held, that the act of receiving Confederate notes in ordinary dealing not being of itself criminal, to constitute an offence, the act must be done with an intent to aid the rebellion. But when the act of selling goods or lending money with a knowledge that the goods or money are to be used in the commission of a crime, is of itself a crime, the motive is irrelevant, and the offence is complete without reference to the motive; as in the case of the loaded gun, selling horses for the use of the rebel army, or furnishing money to equip rebel soldiers. In these cases, the acts of themselves aid the commission of crime, and are *per se* criminal.

There is error.

PER CURIAM.        *Venire de novo.*