JOHN P. POINDEXTER *vs.* WILLIAM DAVIS and others.

Where a county contracted a debt during the late war, for the purpose of equipping soldiers for the Confederate service, and afterwards borrowed money to pay that debt; *Held*, that a recovery can be had on a bond given for such money, on the ground that the illegality is too remote.

[*Kingsbury* v. *Suit*, 66 N. C. R. 601, cited and approved.]

Civil action tried before *Cloud, J.*, at Spring Term, 1872, of DAVIDSON Superior Court, having been removed from the Superior Court of STOKES, in which the action was commenced, upon the affidavit of the defendants.

The bond sued on was executed to the plaintiff by one J. J. Martin, as Chairman of the County Court of STOKES, as principal, and the defendants as sureties, June 10th 1862, for the payment of $3,050.00, one day after date.

The evidence showed that in June and July, 1871, the county of Stokes, through its County Court, subscribed $10,000 for the purpose of equipping its first four companies raised for the Confederate service, and borrowed the amount from the Branch Bank of Cape Fear, at Salem. The bond in controversy was given for money borrowed of the plaintiff, under an order

of the County Court, at its June Term, 1862. to pay off one of the notes given to the bank. There was evidence that the plaintiff had knowledge of the object for which the money was borrowed of him, and that the bank debt was contracted for the purpose above stated. The plaintiff offered evidence that he had no such knowledge, but that he loaned the money merely as an investment.

Issues were submitted to the jury, as to the consideration of the bond, &c. His Honor charged, that the plaintiff was entitled to recover, whether he had knowledge of the purpose for, which the money was borrowed, and the consideration of. the notes to the bank, or not. Defendants excepted.

Verdict and judgment for plaintiff, and appeal by the defendants.

*J. M. Clement,* for the plaintiff.
*Scales & Scales,* and *Blacker & McCorkle,* for the defendants.

1. This case comes within the doctrine laid down in *Leak* v. *Commissioners of Richmond,* 64 N. C. 136 and is distinguishable from *Powell* v. *Smith,* 66 N. C. 401, and *Kingsbury* v, *Suit,* Ibid. 601, in which the contracts were between private individuals after the war. Here the contract was with a county, an integral part of the State, and engaged in rebellion.

2. Counties were never authorized to borrow money except by express legislation. During the war such authority .was given only with the view of "resisting the invasion," to use the language of the times.

3. The enforcement of this claim would be indirectly a violation of Art. 7, Sec. 13, of the State Constitution and the Reconstruction Acts of Congress.

4. "If it be unlawful for one man to pay, how can it be lawful for another to furnish him with the means of payment?" Language of the Court in *Cannon* v. *Bryce,* 3 B. & Ald., 179. See also Benj. on Sales, 382.

5. It does not appear affirmatively that a majority of the

8

Justices were present. This is fatal. See *Leak* v. *Commissioners &c., supra.*

READE, J. In the frequent decisions which we have made, to the effect that we will not enforce contracts which were in aid of the rebellion, we are not to be understood as approving of, or aiding the party who attempts to evade his undertaking with his *particeps criminis.* Nor would we be understood as being favorably impressed by the complacency with which their defences are frequently made, as if they supposed that, whatever crime there might be in a breach of *public* faith, it is abundantly atoned for by a breach of *private* faith! But, looking beyond these questions of casuistry, our position is, that, sitting as a Court, we cannot enforce compliance with a transaction, which had for its end and aim the destruction of the Government, whose Constitution and laws we have to administer.

The facts in this case are, that the county had contracted a debt to equip soldiers in the Confederate service, and then contracted this debt to pay that off. The first transaction was clearly in aid of the rebellion, and, for that reason, illegal. But how did it aid the rebellion to pay that debt off? The mischief had been done, and the money borrowed of the plaintiff put not a soldier in the field. It was argued that it kept up the credit of the country and, in that way, aided the rebellion. How did it keep up the credit of the county to make one debt pay another? The argument is a refinement, and the illegality is too remote.

The same question was before us at last term. *Kingsbury* v. *Suit,* 66 N. C. R. 601.

There is no error.

PER CURIAM.                                    Judgment affirmed.