Of three notes sued upon in this action, two were for Confederate money, payable to Jones Bogle, and the other for $500, given to A. M. Bogle, dated 5th May, 1864; payable in Confederate currency; one was for $1,935, and dated 6th May, 1864; the other, dated the 7th August, same year, called for $1,200.
The bonds were issued to the plaintiff.
Defendant stated, that when he borrowed the money for (389) which the bonds were given, he informed Bogle Jones that he wanted the money to buy a forge, to make iron for the Confederate Government; that he was negotiating a purchase of the forge, and had to have the money to complete the trade; that he had sold his land on time, and his contract to make the iron rendered it necessary for him to have the money at once. Bogle Jones furnished him the money at different times; he bought the forge and furnished the Confederate Government with a quantity of iron.
Defendant further stated, that afterwards, as he was passing Jones' house, he informed him that his money was ready for him, and perhaps was on the way to him, and that Jones told him to turn the messenger *Page 319 
back, if he, the defendant, met him, and not to send him the money, but to keep it and invest it for him, Jones, in land or other property; if he could not do this, to keep it until he, Jones, called for it. That he, the defendant, endeavored to invest it, but failed, and the money became worthless on his hands. After the war, Jones told defendant that he, himself, did not expect anything from defendant, but that Bogle would likely contend for it.
His Honor charged the jury, that if Bogle Jones knew that defendant was going to buy a forge with the money, for the purpose of making iron for the Confederate Government, the contract would be illegal and void, and that the plaintiff could not recover.
That the instructions given to defendant by Jones, as to the investment of the money in lands or other property, as deposed to by defendant, would be an appropriation of the money by Jones, and the plaintiff could not recover.
Verdict and judgment for defendant. Appeal by plaintiff.
The case presents two questions:
1. Are the bonds void?
2. If not void, have they been satisfied? (390)
I. The line between what contracts are void, because in aid of the rebellion, and what are not void for that cause, is distinctly marked by the decisions in this Court. In Martin v. McMillan, 65 N.C. 199, PEARSON, C. J., says: "The fact of furnishing houses for the Confederate Government was an act which, of itself, aided the rebellion, and amounted to treason; that was the ground of the decision." It was also the ground of the decision in Smitherman v. Sanders, 64 N.C. 22; Turner v. Railroad, 63 N.C. 522;Robson v. Kingsbury, 66 N.C. 524, and all the cases decided in this Court, except the salt cases, which stand on peculiar grounds. Loaning money to equip a military company, to hire a substitute, and conveying the officer to his command, were all acts of treason. In McKesson v. Jones, 66 N.C. RODMAN, J., said: "The farthest this Court has gone in holding a contract illegal because in aid of rebellion was in Martin v. McMillan. In the present case the aid given the rebellion is much more remote. It was not a sale of military material, nor even a sale of provisions to laborers engaged in making such material, but a lease of land upon which provisions might be raised to feed laborers engaged in an unlawful occupation." So in this case, it may be said the unlawful act was not the direct result of the contract, but a loan of money which might *Page 320 
be invested in land on which there was a forge which might be worked in making iron, which might be sold to the rebel government. As was said in McKesson v. Jones, it is at least two steps removed from the principle of Martin v. McMillan. It is possible, says RODMAN, J., inMcKesson v. Jones, supra: "to foresee and calculate the direct consequences of an act, but if we attempt to follow it out into its indirect and more remote consequences, our reasoning becomes uncertain, and, after a few steps, altogether unsatisfactory." Many principles of law are based on this reasoning, and it is of almost constant application in the law of damages, arising from breach of contracts. It is submitted this case is governed by McKesson v. Jones.
(391) II. His Honor held that if the defendant was believed, the facts deposed to amounted to such an appropriation as discharged the notes payable in Confederate money. It is difficult to perceive the idea his Honor intended to convey by the word appropriation. The word has two meanings in law. It is sometimes used to express the application of a sum of money to one of several debts, due from the same debtor to his creditor, sometimes to describe the acts of setting apart certain goods or chattels to the purpose of a contract, but in the connection in which it is here placed, it has no legal significance whatever. The transaction, if anything, was a payment. If a payment, it satisfied the debt; and if the debt was satisfied, the property in the specific sum of money required for that purpose, passed to the payees. For the one of these results implies the other. If the property in the money passed, the payees might, after demand and refusal, maintain an action of detinue or trover for the money against the defendant or third person, to whom he has passed it. But will it be contended that the payees could have sustained an action of detinue or trover, or any other action in which it is necessary to allege and prove property in the plaintiff. If this was a payment, it is one by which a debt is satisfied, and yet the debtor parts with nothing, and the creditor receives nothing, which is absurd.
I. The three notes are to be taken as one contract, made in May.
A bond for loaned money to hire a substitute, or with the knowledge it was to be used to hire a substitute in the Confederate army, is illegal.Critcher v. Holloway, 64 N.C. 526; Kingsbury v. Gouch, 64 N.C. 528; see also Smitherman v. Sanders, Ibid, 522 Martin v. McMillan, 63 N.C. 486.
If Plummer had borrowed the money to pay an illegal debt, it would *Page 321 
not be illegal as in Poindexter v. Davis, 67 N.C. 112; Kingsburyv. Suit, 66 N.C. 602; Calvert v. Williams, 64 N.C. 168. (392)
II. As to payment: See Simmons v. Cahoon, 68 N.C. 168.
The jury have found the fact that all three of the notes in suit were given to Bogle Jones for the loan of money, with the full knowledge, on their part, that the same was to be expended in the purchase of a forge, at which the defendant was to make iron for the Confederate Government. The forge was purchased with this money, and the defendant did "make and deliver to the Confederate Government several tons of iron, a large quantity of which was known as gun scalps."
The line between such contracts as are tainted with rebellion, and therefore void, and those which are not so infected, is clearly marked by the decisions of this Court. The principle established is, that whenever a dollar has been expended to destroy the life of the Republic, it shall never return to the pocket of its owner.
To hold otherwise, would be to invite other rebellions.
A. sells to an agent of the Confederate Government mules, knowing that they are to be used in that service, but takes the individual bond of the agent, with personal security, for the payment of the price agreed upon. He cannot recover it. Martin v. McMillan, 63 N.C. 486.
Money lent during the rebellion to a county to enable it to provide salt for its citizens, and thus avoid one of the penalties of the blockade, cannot be recovered. Leak v. Commissioners, 64 N.C. 132; Setzer v.Commissioners, Ibid, 516.
A. lends money to B. with the knowledge that B. intends with it to hire a substitute and put him into the Confederate army. A. cannot recover the money. Critcher v. Holloway, 64 N.C. 526; Kingsburyv. Gooch, Ibid, 528. (393)
Money is lent with a knowledge that it is to be used in equiping [equipping] a company for the Confederate service. It cannot be recovered.Smitherman v. Sanders, 64 N.C. 522.
It is not difficult to perceive that the principle of the cases cited, govern the case before us. For it is not easily imagined how one could render more efficient aid to the Confederacy, in 1864, than by furnishing it with iron, and especially iron suitable for making guns, thereby enabling the Confederacy to protract the struggle and counteract the measures of the Government of the United States for the suppression of the rebellion.
The Courts of the rightful government cannot countenance such *Page 322 
contracts as the one before us, but will leave the parties, who are in paridelicto, where they stand.
The judgment of the Superior Court is affirmed.
PER CURIAM. Judgment affirmed.
Lance v. Hunter, 72 N.C. 179; Brickell v. Comrs. 81 N.C. 243