WILLIAM DAVIS *v.* THE BOARD OF COMMISSIONERS OF STOKES COUNTY and JOHN F. POINDEXTER.

(2.)

WILLIAM DAVIS *v.* THE BOARD OF COMMISSIONERS OF STOKES COUNTY.

Where a late County Court borrowed money in 1862, without having any legal authority so to do; and the plaintiff became the county's surety on the bond for the borrowed money, a part of which he has since been compelled to pay, under suit: *Held,* that such plaintiff had no right to call up the County Commisioners of the said county, to re-imburse him for the amount already paid, or to exonerate him from the payment of the balance due.

(*Poindexter* v. *Davis,* 67 N. C. Rep. 112; *Weith & Arents* v. *City of Wilmington,* 68 N. C. Rep. 112, cited and approved.)

CIVIL ACTIONS, originally instituted in the Superior Court of Stokes county, and thence removed to the Superior Court of FORSYTHE County, and tried by *Wilson, J.,* at Fall Term, 1874.

The two suits 1 and 2, involving the same points were agreed to be tried together by his Honor, without the intervention of a jury, who found the material facts to be.

1. That the county of Stokes, by her Justices, a majority being present, at June Term, 1861, authorized the borrowing from the Br. Bank of Cape Fear at Salem, $10,000, in four equal instalments of $2500 each, on the bonds of the county, to be executed by their Chairman and five associate Justices, for the purpose of equiping four military companies, of which the Brown Mountain Boys was one.

2. The Court appointed an agent for each company, to carry into effect the order; M. T. Smith being agent for the Brown Mountain Boys and Wm. Flynt, agent for the Town Fork Invincibles.

3. At their September Term, 1861, a majority of Justices

being present, the Court authorized an additional $1000 to be borrowed of the same bank for each of the companies.

4. The first installment of $2500 was drawn by the agent, M. T. Smith, as to a part thereof, to wit, $325, and the balance by Milton Smith, the Captain of the Brown Mountain Boys, who paid the money to one Fries, for cloth for the company and filed his vouchers for such payment with M. T. Smith, the county agent. Only $500 of the $1000, was applied by the agent himself for the use of the company.

5. Bonds of the county, signed by J. J. Martin, Chairman, and by sureties were executed for these sums severally and the bond for the larger sum was several times renewed at the bank before payment.

6. At March Term, 1862, the Justices, a majority present, authorized money to be borrowed from individuals to pay the debt due to said bank.

7. At the ensuing June Term of the Court, the authority was renewed, and money again authorized to be borrowed from individuals.

8. On the 10th day of June, 1862, W. Flynt had executed a bond with security to John F Poindexter, the defendant in the sum of $3050, for which the agent M. T. Smith, received the money and sent it by Flynt to the bank, who paid the debt of $2500, and the debt of $500, the bonds being produced in evidence.

9. Poindexter subsequently obtained a judgment in the Superior Court against Davis, the plaintiff, in this action, and the other sureties for the $3050 loaned the county to pay the bank debt; of this recovery, Davis has paid $500. After this payment, Poindexter assigned his judgment to one James Davis.

10. Before Poindexter sued on his debt, he presented the claim to the Board of Commissioners of Stokes county, who audited the same and allowed it.

The foregoing facts relate chiefly to the first case, (1.) but also pertain to the points raised in case No. 2, the second; to which his Honor also found the following additional facts.

That Flynt as the county agent of the other company, the Town Fork Invincibles, borrowed of said bank $2500. This debt was paid by money borrowed of the plaintiff, Wm. Davis, who knew all the circumstances attending the borrowing of the money from the bank and to what purposes said money was to be applied.

The case states that the plaintiff, on the trial before his Honor, abandoned his causes of action against the Board of Commissioners.

His Honor, upon the foregoing facts adjudged: That the bank debts referred to, were contracted by the county of Stokes for war purposes, in aid of the rebellion.

That the money obtained from the plaintiff, Davis, and also that from Poindexter was procured and used for an innocent purpose, which was neither calculated nor intended to aid the rebellion.

That the acts of the General Assembly, under which the Justices of Stokes borrowed the money, were passed expressly to aid the rebellion and were therefore void, and conferred on the county no authority to borrow money for any purpose.

That the auditing Poindexter's debt by the County Commissioners on the 3d of January, 1870, did not place the county under a legal obligation to pay it.

And therefore the plaintiff cannot recover in either of his actions. Judgment accordingly, from which, plaintiff appealed.

*Dillard & Gilmer, Scales & Scales* and *Shipp & Bailey*, for appellant.

*Graves*, contra.

READE, J. In *Poindexter* v. *Davis*, 67 N. C. Rep. 112, it was decided, that a bond given for money loaned to pay off a debt which had been contracted in aid of the rebellion was not affected by the illegality of the original debt. In that case the County Court of Stokes county had borrowed money of a bank to equip soldiers for the Confederate service. That was

of course illegal. The County Court subsequently borrowed money of Poindexter to pay off the bank debt. And we held that the illegal consideration of the bank debt did not affect the consideration of the Poindexter debt. The County Court gave a bond to Poindexter for the money borrowed of him, and the present plaintiff Davis, was a surety upon that bond; and the Poindexter suit was against him, and a recovery was had against him, and he has paid a part of the debt, and now seeks to compel the county of Stokes to reimburse him the amount he has paid, and to exonerate him from the balance by the payment thereof by the county, upon the ground that the county is primarily liable.

There is no doubt of the rule, that the principal is responsible to the surety for any liability incurred by the surety at the request of the principal. But that rule is subject to exceptions. A surety for an idiot, infant, *feme covert*, &c., may be liable when the principals are not liable either to the obligee or to him. So a surety for a corporation in a transaction where the corporation has not the *power* to contract, may be liable when the corporation is not. And a corporation may exceed its powers where there is no moral turpitude; as a Board of County Commissioners contracting a debt to build a church, a very praiseworthy object; but still, it is beyond their *power*; and *they* would not be bound while their surety would be. Grant then, that the borrowing of money of Poindexter by the County Court of Stokes county to pay the bank debt, was not tainted with political turpitude yet the County Court had no *power* to borrow the money, or to give the bond. It may be true that there were statutes of a rebel legislature which authorized it; but such statutes were void. But while the County Court had no power to give the bond, the plaintiff Davis had the power to do it; and there being no moral or political turpitude he is bound by it. But when he calls upon the people of Stokes county to reimburse or indemnify him, they have the right to answer, that he was not *their* surety;

that the County Court was not *their* agent with power to contract that debt, and therefore, they are not liable.

It may seem hard—it is hard—that the plaintiff should have to bear the whole burden of what was a common cause; and the "pomp and circumstance" of equipping soldiers for the field lost much of its glory when tarnished by the refusal to pay for it; but still there is no obligation which the Courts of this Government can enforce.

The principles governing this case are discussed more at large in *Weith & Avents* v. *City of Wilmington*, 68 N. C. R. 112, and in a number of cases in this Court within the last few years growing out of transactions in aid of the rebellion, to be found collected in 4, Bat. Digest.

The other branch of this case is governed by the same principles as are enunciated in this branch.

There is no error.

PER CURIAM.                    Judgement affirmed.