W. W. BRICKELL, Guardian, v. COMMISSIONERS OF HALIFAX.

*Contract—Burden of Proof.*

A contract made by a county during and in aid of the late war cannot be enforced; and the *onus* of showing it was made for an innocent purpose is upon the party seeking its performance.

(Remarks of SMITH, C. J., upon the ruling in *Leak* v. *Com'rs of Richmond*, 64 N. C., 132.)

(*Leak* v. *Com'rs*, 64 N. C., 132; *Setzer* v. *Com'rs*, *Ibid*, 516; *Rand* v.

BRICKELL *v.* COMMISSIONERS.

*State*, 65 N. C., 194; *Logan* v. *Plummer*, 70 N. C., 388; *Lance* v. *Hunter*, 72 N. C., 178; *Weith* v. *Wilmington*, 68 N. C., 24; *Davis* v. *Com'rs*, 72 N. C., 441, cited and approved.)

CIVIL ACTION tried at Spring Term, 1879, of HALIFAX Superior Court, before *Eure, J.*

The facts agreed on are that at May term, 1862, of the court of pleas and quarter sessions of Halifax county, a majority of the justices of the peace being present, R. B. Pierce chairman of the court was appointed commissioner to borrow money upon the credit of the county to buy salt for distribution among the people of the county, and was authorized to execute a bond to secure payment of the same. Accordingly on the 23rd of June, 1862, he borrowed three thousand dollars of the plaintiff's intestate (William Brickell, as guardian of the plaintiff's wards) and gave bond for the amount. The money was used by the commissioner in the purchase of salt which was distributed gratuitously among the poor of the county, and at cost to those able to pay for it. On the 24th of November, 1863, said Pierce, chairman as aforesaid, executed the bond sued on in renewal of the one first given, including the accrued interest, which has been presented for payment from time to time, and payment refused. When said wards became of age they declined to take the bond sued on, and said intestate accounted fully with them for the amount thereof. The court gave judgment for plaintiff and defendants appealed.

*Messrs. Gilliam & Gatling*, for plaintiff.
*Messrs. W. H. Day* and *Mullen & Moore*, for defendants.

SMITH, C. J. The facts of this case are not distinguishable in principle from those before the court in *Leak* v. *Com'rs of Richmond*, 64 N. C., 132, and it is conceded that if that decision is adhered to, the present action cannot be maintained.

16

In that case after full argument and careful consideration it was declared by a unanimous court that the bond the payment of which was sought to be enforced was illegal and void. In delivering the opinion the Chief Justice says: "At the time of the legislative act giving power to the justices to make the contract, and at the date of the contract, the persons exercising the power of the state, and the persons exercising the power of the county, had disavowed their allegiance and put themselves in open hostility to the rightful state government and to the government of the United States; in other words, there was rebellion. It follows that the courts of the rightful state government, which has regained its supremacy, cannot treat the acts of persons so unlawfully exercising the powers of the state and county authority as valid, unless the court is satisfied that the acts were innocent and such as the lawful government would have done. So when the plaintiff asks the court to compel the defendants who are in the rightful exercise of the power of the county to perform a contract made by a set of men who were wrongfully exercising the power, the *onus* of showing that the contract was made for an innocent purpose and not in aid of the rebellion, is upon the plaintiff; if the matter is left in doubt the courts cannot enforce the claim against the rightful authorities of the county. So far from being left in doubt, it is clear that the contract was in aid of the rebellion." In the course of the discussion he refers to the provision contained in the constitution, article seven, section thirteen, and adds: "Here is a declaration of the will of the people, obligatory upon the courts, that no war debt, as it is termed, contracted either by the state or by the counties, or cities or towns shall be paid." The result is summed up in these words: "That furnishing salt to the people, during the war, was calculated and intended to aid in resisting the invasion; in other words, aiding the rebellion."

BRICKELL v. COMMISSIONERS.

The doctrine is reiterated and applied in *Setzer* v. *Com'rs* of *Catawba*, 64 N. C., 516, determined at the same term.

The vitiating taint is extended to state treasury notes delivered in redemption of interest due on bonds issued before the war in *Rand* v. *The State*, 65 N. C., 194. The principle established in *Leak's* case is approved in *Logan* v. *Plummer*, 70 N. C., 388; *Lance* v. *Hunter*, 72 N. C., 178, and in other cases.

In *Weith* v. *City of Wilmington*, 68 N. C., 24, READE, J., uses this language: "Why was it that the convention of 1865 ordained that the state should never pay any debt contracted in aid of the rebellion? And why was it provided in the constitution of 1868 that neither the state nor any municipal corporation, should ever pay such debts? Evidently because the considerations were illegal and it was against public policy, for the rightful government, after its rehabilitation, to pay, or allow to be paid by its municipal corporations which are but parcels of the state, any debt contracted by the rebel authorities."

In *Davis* v. *Com'rs of Stokes*, 72 N. C., 441, the defendants had borrowed money of Poindexter to pay a debt previously contracted with the bank for the equipment of soldiers for the service of the Confederate States, and had given him a county bond therefor with the plaintiff as surety. Poindexter sued Davis and recovered judgment on the ground that the taint of the original transaction did not reach and avoid the bond for money borrowed to pay the illegal debt, and Davis, having discharged the larger part of the judgment, sought in this action to compel reimbursement and exoneration from the county. The application was denied, READE, J., saying: "Grant then that the borrowing of money of Poindexter by the county court of Stokes, to pay the bank debt, was not tainted with political turpitude, yet the county court had *no power* to borrow the money or to give the bond. It may be true that those were statutes of a

rebel legislature which authorized it, but such statutes were void."

We refer to these cases to show how firmly established in subsequent adjudications is the principle laid down and acted on in *Leak's* case. After these repeated recognitions of its authority, the tendency of public and private interests to find an adjustment upon that basis, and the importance of adhering to well considered precedents, we would not feel at liberty to disturb the decision and unsettle the law, with the mischiefs consequent thereon, unless upon the clearest convictions of error.

The plaintiff's counsel calls our attention to a case recently decided in the court of appeals of Virginia, *Dinwiddie County* v. *Stewart*, 28 Gratt., 526, in which a similar contract entered into for the supply of salt to a county for the use of the people, is sustained and enforced. The decision is rendered by a bare majority of its members, and able and elaborate opposing opinions upon both sides of the question delivered. The dissenting opinion of ANDERSON, J., in which President MONCURE concurs, arrives at a conclusion unfavorable to the legal validity of the claim by a train of reasoning in entire harmony with that of this court in *Leak's* case. We cannot regard it as of controlling authority.

Whatever might be our own opinion were the matter *res integra*, and the question an open one, we feel constrained by the force of the precedents, to abide by the former action of this court and not to open the door to the unforeseen mischiefs which may follow the unsettling of a long established rule of law.

The judgment must therefore for the error assigned be reversed and the action dismissed, and it is so ordered.

Error.                                                    Reversed.