C. C. FINEMAN v. J. B. FAULKNER, ADMINISTRATOR.

(Filed 12 September, 1917.)

**Vendor and Purchaser—Contracts—Public Policy—Immoral Use.**

> When the sale of goods is lawful in itself, the fact that they are used in an immoral place does not affect its validity when such use is not participated in by the vendor; and where a phonograph is sold to a woman of bad character, keeping an immoral place, known to the vendor, the mere fact of the vendor's knowledge thereof, will not prevent his recovering the purchase price or the enforcement of his vendor's lien thereon.

APPEAL by defendant from *Whedbee, J.,* at June Term, 1917, of EDGECOMBE.

This is an action against the administrator of Mamie Faulkner upon a note for the purchase of an Edison machine. The defense set up by the administrator is that the note was void because contrary to public policy. Counsel agreed upon the following statement of facts:

"That defendant's intestate was on 18 September, 1916, and several years prior thereto, a public prostitute, and was on said date carrying on her trade at her home in Princeville, across the river from the town of Tarboro; that plaintiff knew by general reputation at the time the paper-writing set forth in the complaint was executed that the defendant's intestate was a prostitute, and, knowing such, sold her the musical instrument referred to, delivered it and records to her home in Princeville, and had her execute the paper-writing referred to in section 1 of the complaint; that plaintiff had no interest in the business of defendant's intestate and in no way aided her in carrying it on, other than the mere sale of the musical instrument to her might be said to do so; that the sale to her was in the usual course of business and similar in terms and in every way to other sales made by him from time to time; that the plaintiff is a retail dealer of pianos and talking machines in the town of Tarboro, N. C.; that the machine in question was of the character in general use and had no slot attachment."

*Donnell Gilliam (by brief) for plaintiff.*
*James M. Norfleet and A. W. MacNair for defendant.*

CLARK, C. J. Mr. Gilliam, the counsel for the plaintiff, is absent in the army, but we think the principles covering this case are admirably summed up in the following quotation which, with a slight modification, is taken from his brief:

"When the selling of goods is in itself unlawful, the price cannot be recovered with the aid of the court. When the thing sold can only be used for an unlawful purpose, the price cannot be recovered. But when the sale of the goods is entirely lawful and the thing sold is, under ordi-

nary circumstances, used for a perfectly lawful and legitimate purpose, the mere knowledge of the vendor that the vendee is a person of bad character or engaged in an unlawful business will not prevent recovery by the vendor, provided he did not sell the article to aid in the unlawful business nor was an accessory to the unlawful use of the article by the vendee further than by selling the article which, so far as he was concerned, might be used in a perfectly lawful and proper manner."

It would be singular if the purchaser of an article of this kind, which is not ordinarily used for immoral purposes, can refuse payment or her administrator can be protected from payment, upon the ground that the purchaser was a person of bad character or engaged in an illegal occupation. It would be as reasonable to say that such persons are exempt from liability to pay for provisions or for clothing or anything else. This would be, indeed, encouragement to them, unless it should debar them from all such purposes, neither of which the law intends. Suppose a merchant or a grocer should sell provisions or clothing in the ordinary course of dealing to one whom he happens to know is engaged in illicit distilling or retailing intoxicating liquors, or in any other unlawful occupation, without aiding him in his unlawful purposes, can such illicit dealer plead his own illegal occupation to prevent payment for the articles thus bought?

In *S. v. Bevers,* 86 N. C., 595, it is said that to defeat the plaintiff's recovery, "It must appear that the very party who is seeking aid from the Court participated in the unlawful purpose. Indeed, it is said that the very test of the application of the principle is whether the plaintiff can establish his case otherwise than through the indebtedness of an illegal transaction *to which he was himself a party.*"

In this case it is agreed as a fact "That plaintiff had no interest in the business of defendant's intestate and in no way aided her in carrying it on, other than that the mere sale of the musical instrument to her might be said to do so; that the sale to her was in the legal course of business and similar in terms and in every other way to other sales made by him from time to time."

In *Armfield v. Tate,* 29 N. C., 258, it was held that "The circumstances that the vendor was informed before the completion of the contract that the vendee intended the place as a residence for his kept mistress does not vitiate the contract." The Court said that the fact that the vendee intended to use the house for an immoral purpose did not destroy the contract, for the use to which he intended to put the property after he became the owner of it should not protect him from payment of the purchase money to the vendor who had no control over the subsequent use of the land. This case is stronger than that, for the

seller here had no knowledge that the machine was to be used for immoral purposes, if it was so used.

The authorities drawing the line between cases in which the vendor participates in the illegal purpose, and that in which he does not, are admirably set out by *Brown, J., Electrova Co. v. Ins. Co.,* 156 N. C., 232, where the discussion is so full and clear that we can add nothing.

The defendant relies upon *Calvert v. Williams,* 64 N. C., 168, where a note given for a gambling debt was held void. This was because the statute so provided, for, unlike this case, the consideration was illegal. The same was true in *Gooch v. Faucett,* 122 N. C., 270, which denied recovery, for the same reason, upon a note given for a bet upon a horse race. In *Rowland v. B. and L. Asso.,* 115 N. C., 825, the Court refused to enforce a contract that was invalid under our usury statutes. The same was true in *Martin v. McMillan,* 63 N. C., 486, where the plaintiff was not allowed to recover payment for mules sold the defendant for use by the Confederate government, which was a transaction invalid in itself, and in *Smitherman v. Sanders,* 64 N. C., 522, where it was sought to recover money borrowed to be used in equipping a company for the Confederate army.

Probably the latest case on the subject is *Loose v. Larsen* (Nev.), L. R. A., 1917 B., 1166, in which it is held that the vendor "is not prevented from recovering the purchase price of liquors sold for resale to one having a license to deal in them by the fact that the resale will incidentally encourage the business of a house of ill-fame conducted by the buyer on the premises where the liquors are to be sold."

In the very full notes thereto it is said: "In harmony with the foregoing decision, that a vendor of goods who does not participate in the running of a house of ill-fame, or do anything in furtherance thereof, may recover the purchase price of the goods, though he knew that the vendee intended them to be kept and used in such a house, are *Music Co. v. Berry,* 85 Ark., 9; 122 Am. St., 17 (sale of a piano); *Belmont v. Furnishing Co.,* 94 Ark., 96; 140 Am. St., 112 (sale of furniture); *Schankel v. Moffat,* 53 Ill. App., 382 (sale of furniture); *Hubbard v. Moore,* 24 La. Ann., 591; 13 Am. Rep., 128 (sale of furniture); *Sampson v. Townsend,* 25 La. Ann., 78 (sale of furniture); *Brewing Asso. v. Mason,* 44 Minn., 318; L. R. A., 508; 20 Am. St., 580 (sale of liquor); *Liquor Co. v. Shaw,* 38 Wash., 398; 3 Ann. Cas., 153 (sale of liquor)."

The defendant relies upon *Godwin v. Tel. Co.,* 136 N. C., 258, where the Court refused a mandamus to compel the telephone company to place an instrument in a house of ill-fame. This was almost necessarily for aid in an illegal business. Besides, the purchaser was not, as in this case, seeking to evade payment for a telephone which had been

bought. The defendant also relies upon *Courtney v. Parker,* 173 N. C., 479, where the plaintiff sold building material, which was a lawful business, but was denied recovery because he was doing business illegally, contrary to ch. 77, Laws 1913, and therefore the sale by him was illegal, and he could not ask the aid of the Court to recover under it. It does not affect the principle here that the balance due is secured by lien on the machine. The defendant, while refusing payment of the purchase money, did not even offer to return the machine.

In all the cases in which recovery has been denied, it will be found that either the consideration or the transaction was illegal or the vendor participated in the illegal purposes of the purchaser. The sale of an Edison talking machine was a legitimate transaction and for a valuable consideration. The seller had no control over the use to which it should be put, and did not sell to aid in any legal purpose, and cannot be held responsible therefor from the simple fact that he knew that the purchaser was carrying on an illegal business.

The judgment of the Court upon the facts agreed is

Affirmed.