ABRAM MARTIN v. WM. Z. RICHARDSON and WALKER SMITH.

When a negotiable instrument has been transferred, it becomes affected in the hands of the holder, by any equity the obligor may have against such holder and no subsequent transfer will defeat that equity.

*Therefore*, where A is indebted by bond to B, who transfers it without endorsement to C, and at the time of such transfer, C owes A a bond; after holding it sometime, C returns A's bond to B.   In an action by B against A upon the bond due B:  *Held*, That it was subject to the set off of C's bond to A, though B may have had no notice of the indebtedness of C to A.

(*Harris* v. *Parham*, 65 N. C. Rep. 584; *Riddick* v. *Jones*, Ibid. 382; *McConnaughey* v. *Chambers*, 64 N. C. Rep. 284, cited and approved.)

CIVIL ACTION, tried before *Tourgee, J.*, at Fall Term, 1872, of ROCKINGHAM Superior Court.

The following facts are agreed. On the 30th day of July, 1855, the defendants executed their bond to the plaintiff for the sum of $950, which bond the plaintiff held until 1862. Sometime in that year one James L. Cardwell, with the view of purchasing a lot of tobacco from the defendant, Richardson, and which he would only sell for specie, went to the plaintiff and purchased the bond, the subject of this action, and gave therefor his own bond for the same amount, and thereupon the bond now in suit was passed to the said Cardwell without endorsement. The defendant, Richardson, declined to sell his tobacco for the bond, but insisted that as he held a bond on said Cardwell for the sum of $954, given the third day of January 1861, and due one day after date, that one note should be applied to the payment of the other, and the balance upon a settlement, if any, he would pay over to Cardwell; and Richardson alleged that Cardwell had several times promised to make the application. Cardwell never came to a settlement. He kept the bond of the defendants until sometime in the year 1866, when he returned it to the plaintiff, still as now unendorsed, and took up his own bond.

The following facts were found by the jury, on issues submitted to them: 1st. That Cardwell while in possession of defendants' bond, agreed with the defendant, Richardson, that one bond should be applied to the payment of the other, as far as it would go. 2d. That at the time Cardwell returned the bond to the plaintiff, to-wit: in 1866, he, Cardwell was solvent, had been so from 1861, and continued so until the latter part of 1868. He is now a bankrupt and insolvent.

Upon the facts agreed, and as found by the jury, his Honor decided, that the bond in the hands of Richardson was an offset to the bond sued on by the plaintiff. A judg-

ment in favor of the plaintiff for the sum of $    , the remainder due after allowing said offset.   From which judgment the plaintiff appealed.

*Scales & Scales,* for appellant.
*Dillard, Gilmer & Smith,* contra.

SETTLE, J.   The principle governing this case is decided in *Harris* v. *Parham,* 65 N. C. Rep. 584.   But it was said upon the argument, that as the plaintiff had assigned the bond on the defendant to Cardwell, without endorsement, in 1862, and received it again from Cardwell in 1866, still without endorsement, he had never parted with the legal title, and that therefore the bond from Cardwell to the defendant constituted no set off to the bond sued on, notwithstanding the agreement to that effect between Cardwell and the defendant.

This position is answered by the decision above cited.   It declares that the Code of Civil Procedure, sec. 55, abrogates the principle of the common law, that a chose in action cannot be assigned, confers an unlimited right to assign " anything in action " arising out of contract, and subjects the assignee to any set off *or other defence* existing at the time of, or before, notice of the assignment.   The only saving being in regard to negotiable promissory notes and bills of exchange transferred in good faith and upon good consideration before due.

The Chief Justice, in delivering the opinion of the Court, predicts that this will put an effectual check to the trading of notes after maturity.   Let that be as it may, we must apply the principle here enunciated to the facts in our case.

It appears that for several years Cardwell and the defendant each held a bond on the other for about equal amounts. Cardwell, it is true, purchased the bond he held on the defendant from the plaintiff, but that does not affect the question.   The jury find " that Cardwell, while in the pos-

session of the defendant's bond, agreed with him that one bond should be applied to the payment of the other as far as it would go."

The defendant then was lulled to sleep by the promise of Cardwell, and he continued to sleep for a long time, and only awoke to find that Cardwell had become a bankrupt, after re-assigning his bond to the plaintiff. But, it was said, that this would work a great hardship on the plaintiff. That may be true, but he had put it in the power of Cardwell to work a hardship on the defendant; and the singular fact, that Cardwell proposed to re-assign the bond after such a lapse of time and such changes in the condition of the country, should have aroused the plaintiff and caused him to inquire into the true state of the facts.

Whether he did so or not, is immaterial so far as the defendant is concerned; for while the bond was the property of Cardwell, it became affected by an equity which can not be defeated by want of notice to the plaintiff.

*McConnaughey* v. *Chambers,* 64 N. C. Rep. 284, and *Riddick* v. *Moore* 65 N. C. Rep. 382, both admit the principle, that where there has been an agreement between the parties, that one debt should be set off against the other, it is not in the power of one party to assign the evidence of indebtedness, and thereby defeat the agreement.

There is no error.

This will be certified, &c.

PER CURIAM.                         Judgment affirmed.