THOMAS G. PUGH v. J. W. GRANT, Adm'r.

*Notes and Bonds—Negotiable Instruments—Evidence—Burden of Proof—Competency of Witnesses at Common law.*

1. The possession of negotiable paper by an endorsee, whether past due or not, is a *prima facie* presumption that he is the true owner, and

for value; and the burden of proof to rebut this presumption is upon him who alleges any defect in the title.

2. But upon proof of fraud or illegality being offered, the burden is shifted to the holder, and he must show that he received it *bona fide* for value.

3. The assignee of a bond after its maturity, holds it subject to every defence existing between the assignor and the maker at the date of the assignment and before notice thereof, and hence the finding in this case that the assignment was not made in good faith and for value is immaterial.

4. The effect of the act of 1879, ch. 183, amending section 343 of the Code, is to restore *all* the common law rules of evidence, applicable to a suit on a bond executed prior to August, 1868.

5. And by the common law, all parties to an action and those having a direct legal interest in the event thereof, were excluded as witnesses, except where the interest of the person offered was equally balanced; and coming within this exception is an endorser of a note, who is a competent witness for either party in a suit between his endorsee and the maker.

(*French* v. *Barney*, 1 Ired., 219; *McArthur* v. *McLeod*, 6 Jones, 475; *Gilliam* v. *Henneberry*, *Ib.*, 223; *Peebles* v. *Stanley*, 77 N. C., 243, cited and approved.)

CIVIL ACTION tried at Spring Term, 1880, of NORTHAMPTON Superior Court, before *Gudger, J.*

This action was begun in a justice's court, and brought by the appeal of the plaintiff to the superior court. In both courts the pleadings were oral, and so intricate as to make it somewhat difficult to state them intelligently.

The plaintiff declared as indorsee of two bonds executed by the defendant's intestate to one John A. Vincent, and by him indorsed to the plaintiff. The bonds were both payable on demand—one being for $51.88, dated the 5th day of January, 1861, and indorsed the 15th day of April, 1875, and the other for $100, dated the 4th March, 1861, and indorsed the 15th day of April, 1876.

The defendant denied the title of the plaintiff to the bonds, and alleged that there was fraud in their indorsement, and

by way of set-off and counterclaim, he pleaded certain bonds, in all amounting to $1,000, which the plaintiff's assignor was owing to his intestate, and a further sum of $463.73 which defendant as administrator had paid to use of said assignor, prior to the alleged indorsement on a note in which he and the defendant's intestate were jointly bound.

In reply, the plaintiff denied the fraud alleged, and pleaded accord and satisfaction of the claims against his assignor, attempted to be set up in defendant's plea of set-off and counterclaim.

In turn, the defendant denied that there had been any accord and satisfaction of said claims, and alleged fraud on the part of the plaintiff's assignor in procuring the instrument purporting to be such (which instrument is referred to in the case as exhibit "C.") This allegation of fraud the plaintiff denied.

At the trial two issues were agreed to by counsel and submitted by the court:

1. Were the bonds in action assigned as alleged in good faith and for a valuable consideration?

2. Was the agreement marked "C" procured from defendant by the plaintiff's assignor (Vincent) with intent to defraud intestate's estate, by concealing from the defendant the fact that he had in his possession, or had recently transferred to the plaintiff, the bonds sued on?

In support of the first issue, the plaintiff, after putting in evidence the bonds sued on, and the indorsements thereon, read the deposition of his assignor, Vincent, going to show that the indorsements were truly made at the times they respectively bear date, to-wit, the 15th April, 1875, and the 15th April, 1876, and that the consideration of their transfer to plaintiff was a debt due from the witness to the plaintiff, and the sum of twenty dollars paid him in cash at the time of the transfer.

As tending to show fraud in the assignment of the bonds

to plaintiff, the defendant proved that the plaintiff was a brother-in-law of his assignor, Vincent, who was at the time in failing circumstances, and that no one was present at their settlement, and no memorandum thereof made, or receipt taken.   That the plaintiff himself had no visible property, being a clerk in a store at a salary of $65 per month, with a family to support, and that very soon after the transfer of these bonds, the said Vincent conveyed to the plaintiff all his real estate situate in North Carolina.

Upon this issue His Honor instructed the jury, "that the question was whether the assignment of the bonds was an honest transaction ?   If that was so, and they should find that money, or money's value, was paid as the consideration of such assignment, its amount, unless grossly inadequate, was immaterial ; *but that the burden of proof was upon the plaintiff to establish this issue.*"

Under the second issue, the plaintiff offered in evidence the writing marked "C," which is as follows : "Feb'y 10th, 1877—Rec'd of J. B. Vincent the sum of $238.48, being the amount of three notes and interest, held by the said J. B. Vincent against the estate of James Vincent, to be applied to the credit of the said J. B. Vincent on bonds I hold against him, due the said James Vincent, and when the said J. B. Vincent surrenders to me an account he holds in favor of Pugh & Vincent, I agree then to give him a discharge from any claim that may be due from him to the said James Vincent "—which paper, it is admitted, is signed by the defendant, as administrator; and he showed by the deposition of J. B. Vincent the circumstances under which it had been executed.   He also offered to prove, by reading the same deposition, the nature and extent of the witness' indebtedness to the defendant's intestate, and that the money which defendant claimed to have paid to his use, was not in fact so, for that while he and said intestate had been partners, and the note, upon which said payment was made, was given in

their firm name, still it was for a debt of said intestate, and the witness was, by agreement between them, to be bound only as surety. This evidence was objected to by the defendant at the time the deposition was taken, and the objection renewed at the reading thereof, upon the ground that the witness was incompetent under section 343 of the Code, to speak of a transaction or communication with his deceased partner, and upon that ground the evidence was excluded.

The defendant then offered evidence in support of his plea of set-off and counterclaim.

Upon the second issue His Honor instructed the jury that " where a contract is made between two parties, and any fact material to the consideration moving said contract is exclusively in the knowledge of one of said parties, it is the duty of such party to make known such fact, and if he intentionally fails to do so, it is a fraud upon the other contracting party," and further, that it was a question of fact for them to determine, whether there was such a concealment of any material fact in this case, and that the burden of proof under this second issue was upon the defendant.

To the first issue the jury responded in the negative; and to the second they said, that the agreement marked "C" was procured from the defendant by the plaintiff's assignor, with the intent to defraud the estate of his intestate.

After judgment for the defendant the plaintiff appealed, assigning as errors: 1. That His Honor erred in instructing the jury that the burden of proof to support the first issue was upon the plaintiff; whereas he should have told them that it was for the defendant to show, by a preponderance of testimony, that the plaintiff had used fraud in procuring the indorsement of the bonds to himself. 2. That he erred in excluding the testimony of the witness, Vincent, as to the nature of his alleged indebtedness to the estate of the defendant's intestate. 3. That he erred in not explaining

to the jury, in his charge upon the second issue, what should be considered by them as material to the consideration of the contract—the only alleged fraud being the failure on the part of the assignor, Vincent, to inform the defendant of the fact that he had transferred the bonds sued on, when he entered into the agreement set forth in the exhibit "C."

*Mr. Thomas W. Mason*, for plaintiff.
*Mr. R. B. Peebles*, for defendant.

RUFFIN, J., after stating the case. If the first issue, and His Honor's charge with reference to it, stood alone in the cause, we should unquestionably sustain the defendant's first exception.

As we intepret that portion of the charge, and as we think the jury must have understood it, its effect was to throw upon the plaintiff, suing as the endorsee of negotiable bonds, the burden of establishing affirmatively, not only the genuineness of their indorsement, but that he acquired them *bona fide*, and for a valuable consideration.

Conceding that, in the existing state of the pleadings, the burden of proving *the fact* of the endorsement did rest upon the plaintiff (though that, we think, by no means certain) our understanding of the law is, that upon the production of the instruments, accompanied with such proof as entitled him to read in evidence the endorsements thereon, there was a *prima facie* presumption in his favor, to the extent, that he was the true owner, and that he took them for value. It is a presumption that in a proper case might be rebutted, but the burden of the proof would undoubtedly lie upon the person who might allege any defect in his title. In 1 Daniel on Neg. Inst. § 812, the law is thus stated: " The mere possession of a negotiable instrument produced in evidence by the endorsee, imports *prima facie* that he acquired it *bona fide* and for value, and that he is the owner

thereof. In other words, the production of the instrument and proof that it is genuine (when indeed such proof is necessary), *prima facie* establishes his case, and he may there rest it." And in *French* v. *Barney*, 1 Ired., 219, this court held that there was an implication of law in favor of every holder of a negotiable note, until something be shown to the contrary, that he gave value for it, and came fairly and rightfully by it And to the same effect is 1 Parsons on Notes, 255, and the case of *McArthur* v. *McLeod*, 6 Jones, 475.

In this respect the law makes no discrimination between notes overdue and those not due at the time of assignment, and neither should it. For, if allowed to be negotiated at all, the circulation of past due notes should be upheld by the same presumption in favor of the *title* of the holder, as exists in case of instruments of the other sort. To this rule in favor of the holder of a negotiable instrument, an exception is made when there was any fraud or illegality in its inception. Upon such proof being offered, the holder is required to show that he acquired it *bona fide* for value, there being at such a juncture, says Daniel at § 815, " a shifting of the burden of proof from the defendant to the plaintiff." In the present case, there is no pretence of any fraud practiced at the execution of the bonds sued on, and no suggestion of any illegality in their original consideration—so that it came strictly within the general rule.

But conceding this to be so, and that there was error, it still remains to be determined how far it was made immaterial and harmless, by reason of the finding of the jury upon the other issue.

Becoming the owner of the bonds after their maturity, the plaintiff holds them subject to every defence, whether of set-off or equity, existing between his assignor and the defendant, at the date of the assignment, or before notice thereof given. He stands in the shoes of his assignor, just as if the action were brought in his name, and cannot, any

more than he could, avoid the consequences of the fraud, which the jury have said was used in procuring the settle- ment (exhibit "C"), wherein the claims, relied on to support the defendant's plea of set-off, were attempted to be adjusted. It is therefore, manifestly, immaterial upon what considera- tion, or with what intent, he procured the assignment of the bonds. So long as the second finding of the jury stands, he cannot succeed in his action, and hence, as it seems to us, the first issue, itself, was unnecessary, and without any decisive bearing upon the real merits of the case. If so, then, no error committed in connection with it could be of such weight as to justify the court in disturbing the verdict and judgment, on account of it.

Thus it becomes necessary that we should consider the other branch of the case. And here as we conceive, an error was committed in excluding the testimony of the witness, Vincent, in explanation of the claims against him, held by the defendant, and sought to be used as sets-off against the plaintiff—even though the inquiry with regard to them should embrace transactions, or communications, between the witness and the defendant's intestate.

There can be no question made, but that under section 343 of the Code, as it originally stood, the witness, while competent generally, would have been incompetent as to these particular transactions. Indeed, being the "assignor of the thing in controversy" he was excluded by the very terms of the proviso to that section, as against the defendant administrator. But the question is, as to the effect upon his competency under the act of 1879, ch. 183, adopted as an amendment to that section. By that act it is provided in substance that no person who is a party to an action founded upon a bond to pay money, executed prior to Au- gust, 1868, shall be a competent witness, *but that the rules of evidence in force when said bond was executed shall be applicable to said suit.* For the defendant it is insisted, that this latter

clause of the statute should not be construed literally, and so as to restore *all* the rules of evidence, which obtained at the date of the execution of the bonds sued on, but only such as had reference to the competency, or incompetency of *parties to actions.* His argument is, that the statute was intended to be a disabling act—declaring incompetent some who, under the original section, were competent, and that to give a larger signification to the words of its latter clause, would convert it into an enabling statute, and thus defeat its primary intention. There seems to be much force in this course of reasoning, and were the terms of the statute *in the least,* less certain and precise than they are, we might, and in fact would feel at liberty to yield to it our concurrence; but courts ought not to resort to interpretation (which at last is but conjecture) when there can be no need for it because of the certainty of the language used in a statute.

The true rule for construing a statute, and we may say the only honest rule, for a court really seeking to observe the will of the legislature, is, to consider and give effect to the natural import of the words used. If they be explicit, and express a clear definite meaning, then that meaning is the one which should be adopted, and no effort should be made by going outside of the words used, to limit or enlarge its operation. Above all, is it not to be presumed that the legislature intended any part of a statute to be inoperative and mere surplusage, and yet such must be our conclusion with reference to this particular clause, if we should interpret it as suggested for the defendant. The rules of evidence in force at the date of the execution of the bonds declared on, were those of the common law, and with reference to *parties,* that law has but one rule, which is, to exclude them all as being incompetent. Now, that much was accomplished by the first clause in the act of 1879, by a clear declaration that no party to an action, based upon a

bond executed before a given date, should be a competent witness, and if we should give no other operation than this to its latter clause, it would be simply to pronounce it redundant and meaningless.

Guided then by the only legitimate rule, we feel constrained to give to the statute, and every part thereof, just that meaning which its unambiguous words import, and to hold its effect to be to restore the whole law of evidence applicable to the subject as it stood in 1861, when the bonds sued on were executed.

As we have said, the law of evidence then in vogue was that of the common law, which excluded all parties to actions, and so, too, every person who had a direct legal interest in the event of the action, though not actually a party. But to this last rule there was this exception: If the interest of the person offered as a witness was *equally balanced*, so that he had as much interest on one side as the other, he became a competent witness in the case, and might be called by either party. As coming within the exception, it was held by the common law, that the endorser of a note was a competent witness for either party to an action between his endorsee and the maker. 1 Greenl. on Ev., § 400. In such case, if the plaintiff (endorsee) should recover of the maker (the principal), then the endorser (the surety) would be discharged of all liability. But if the plaintiff should fail in his action against the maker, he could recover the debt of his endorser, who in turn, could recover it of the maker, and so he stood indifferent between them, and was competent for either. *Gilliam* v. *Henneberry*, 6 Jones, 223; *Peebles* v. *Stanley*, 77 N. C., 243.

We therefore conclude that the witness, Vincent, was competent to speak as to the matters for which he was called, and that his exclusion was such an error as entitles the plaintiff to a *venire de novo*.

The other exception it is needless to consider.

Error.                                      *Venire de novo.*