The plaintiff alleges, in substance, that from 25 October, 1888, to 21 January, 1889, he deposited with the defendant from time to time divers sums of money, aggregating the sum of $19,405.72; that from time to time during that period he drew checks upon the defendant, which were paid, for divers sums, aggregating $16,804.21, leaving a balance due to him of $2,601.51; that afterwards, on 1 February, 1889, he demanded of the defendant that it pay to him such balance, and it refused to do so; that he drew a check for the same, which was not paid, etc.; and he demands judgment for such balance and general relief.
The defendant admits that the plaintiff made such deposits, and that it paid checks as alleged, and the demand for the balance, but it alleges that the balance due to the plaintiff is but the sum of $365.69. It alleges that in 1887 and 1888 the plaintiff was sheriff and M. L. Stevens was treasurer of the county of Union; that the plaintiff, as such sheriff, was bound to pay to the said treasurer a large sum of money as taxes collected by him for said county; that he failed to pay the same, but executed to the said Stevens, treasurer, his promissory note for $5,270.75, dated 12 September, 1887, due one day from date; that said Stevens, as treasurer, "at divers times, with the consent and at the request of the plaintiff, drew checks upon the defendant for different sums of money, each check being payable to the party entitled to receive money from him as treasurer, or to his order, and that said checks were (111) paid by the defendant. But before the said checks were drawn the plaintiff made and delivered to the said Stevens his promissory note for the sum of about $5,200, which, with the consent of the plaintiff, the said Stevens deposited with the defendant as collateral security to cover and protect the checks drawn or to be drawn by the said Stevens upon the defendant, and paid by it as aforesaid; that the plaintiff in consideration of his failure and inability to pay to Stevens, as treasurer, the money due by him as sheriff, undertook and agreed with said Stevens and the defendant that if the defendant bank would honor and pay the said checks of Stevens, drawn as aforesaid, he, the plaintiff, would from time to time deposit money in the defendant bank, which should be applied to the repayment of the sums advanced and paid by defendant on the checks of said Stevens, and the plaintiff, in consideration of the advances of money so made by the defendant bank on said checks, further and expressly undertook and promised to pay the amounts so advanced by the defendant — the plaintiff at the time of said promise and agreement having in his hand the tax books of said county, upon which large *Page 80 
sums of money were due to him as sheriff for taxes which should have been collected by him and paid to said Stevens, and applied by the latter to the payment of the claims of those persons to whose order and for whose benefit the said checks were drawn.
"2. That under and by virtue of the said arrangement between the said parties the said Stevens, as treasurer, drew checks on the defendant bank to the amount of five thousand four hundred and seventy-seven dollars and fifty-one cents ($5,477.51), and the defendant paid the same; that afterwards Stevens deposited with the defendant bank the sum of six hundred and eighty-one dollars and sixty-nine cents ($681.69), which, with his consent, was applied pro tanto to his overdraft, leaving (112) a balance of forty-seven hundred and ninety-five dollars and eighty-two cents ($4,795.82) as the amount to be paid by the plaintiff under and by virtue of his said promise and undertaking.
"3. That afterwards, in September, 1888, Stevens deposited with the defendant bank the aggregate sum of twenty-five hundred and sixty dollars ($2,560), which the defendant bank retained under said promise and agreement, leaving a balance of $2,235.82 still due the defendant bank on account of said checks and overdrafts."
It further alleges that "In consideration and performance of his said prior request, and in the further consideration of the surrender by the defendant of plaintiff's note, which the defendant held also as collateral security for the repayment of the money paid by it on said checks, the plaintiff agreed with defendant that the said alleged balance should be applied, as far as necessary, to the repayment of the money advanced or paid by the defendant on the said checks," etc.
The plaintiff, in his reply to the answer, says:
"3. That it is untrue that Stevens, as treasurer, `at divers times, with the consent and at the request of the plaintiff, drew checks upon the defendant for different sums of money,' and it is also untrue that a note amounting to $5,200 was deposited with the defendant by the said Stevens, treasurer, with the consent of the plaintiff, as collateral security to cover and protect the checks drawn or to be drawn by the said Stevens upon the defendant; that the plaintiff, as sheriff, did execute to the said Stevens, as county treasurer, his note for $5,270.75, which said note the said Stevens deposited, as plaintiff is informed and believes, with the defendant after its maturity and without the knowledge or consent of the plaintiff, and the said note was paid by the plaintiff to the said Stevens and surrendered to the plaintiff by the defendant (113) without any notice to the plaintiff that the defendant had or held any claim upon the same; that it is untrue that the plaintiff undertook and agreed with the defendant and the said Stevens to pay the defendant any sum of money which it should expend in cashing the *Page 81 
checks or drafts of the said Stevens, or to deposit money with the defendant to be applied to the repayment of such sums as the defendant had advanced or should advance on the checks of said Stevens, or that the plaintiff obligated himself to the defendant, or in any way assumed liability for the debts of the said Stevens in any sum whatever contracted with the defendant by check, draft or otherwise.
"7. That it is true that the defendant bank surrendered to the plaintiff his note, executed to the said Stevens, county treasurer, for the sum of $5,270.75, but it did so voluntarily, without any notice to the plaintiff that it had or held any claim against him on account thereof, and the plaintiff paid the balance due by him on said note to the said Stevens without notice of any such claim on the part of the defendant bank."
On the trial the defendant tendered the following issues:
"1. Was the money which was paid out by the defendant bank upon the checks of M. L. Stevens, county treasurer, or any part of it, advanced and paid out upon the credit of plaintiff and for his benefit?
"2. If so, how much was so paid out by defendant?
"3. Was the note for $5,270.75, mentioned in the answer, dated 12 September, 1887, and signed by J. P. Horne, sheriff, and due one day after date, assigned to the defendant to secure any money that defendant might pay out on the checks of M. L. Stevens, county treasurer?
"4. If so, when was such assignment of the note made?
"5. How much money did defendant pay out for M. L. Stevens, county treasurer, on account of this assignment over and above what has been paid back to it by deposit of M. L. Stevens, county (114) treasurer?
"6. When did plaintiff first have notice that said note had been so assigned to defendant bank?
"7. What amount was owing by the plaintiff to M. L. Stevens, county treasurer, at the time of such notice?"
His Honor refused to submit these issues to the jury or any one of them, and the defendant excepted, plaintiff's counsel having objected to the issues tendered by the defendant. His Honor then submitted to the jury the following issues, to which the jury responded as hereinafter stated:
"1. Did the plaintiff undertake and agree with the defendant that he would repay to defendant such sum as it should pay out on the checks of M. L. Stevens, county treasurer? Answer: `No.'
"2. Does any sum so advanced by defendant upon the said checks remain unpaid? Answer: `No.'
"3. Did the plaintiff, at the time the defendant surrendered to him his note to M. L. Stevens for $5,270.75, agree that the defendant might deduct from his deposit the amount then due by said Stevens to defendant? Answer: `No.' *Page 82 
"4. Did defendant take the note of plaintiff to said Stevens after maturity? Answer: (by consent) `Yes, 15 September, 1887.'
"5. Did the plaintiff, at the time said note was surrendered to him, have any notice of defendant's claim against said note? Answer: `No.'
To the submission of these issues the defendant excepted.
The plaintiff requested the court to give the jury, among other instructions, the following:
"1. Even if the defendant advanced money upon the checks of Stevens, at the instance and request of the plaintiff and upon his promise to repay the same, yet if the defendant, in making such advancements, (115) relied in any measure upon said Stevens, and not solely upon the plaintiff's promise, and the promise of the plaintiff was simply superadded to that of said Stevens, in such case there arose no liability against the plaintiff, and the jury should answer the first issue in the negative.
"2. As to the third issue, if the jury believe the evidence there was no express agreement on the part of the plaintiff and no implied agreement unless the plaintiff knew, at the time, that the defendant held the same as collateral security."
The court gave the same, adding to the first the following:
"But if the jury believe that money was advanced on the checks of Stevens at the instance and request of plaintiff, and upon his promise to repay the same, if the defendant bank in making said advancements trusted to one of the parties more than to the other, but did in fact trust to one together with the other, the plaintiff would be liable, and the jury should answer the first issue, `Yes'."
The defendant excepted.
The defendant requested the court to give the jury the following, among numerous other special instructions; it declined to do so, and the defendant excepted:
"7. If, when the notice spoken of by the witness Wolfe was served upon the plaintiff, as testified by Wolfe, the plaintiff replied to said notice: `I will go and see Lee and have the matter settled up, I will get a settlement if I can'; and thereafter the bank acted to its damage upon the supposition that the plaintiff admitted his liability, the plaintiff is estopped to deny the affirmative of the first issue, and the jury will answer that issue `Yes,' though they may believe that the plaintiff did not intend in his interview with Wolfe to admit his liability for the treasurer's overdraft.
"8. Upon the statement of the plaintiff as to what occurred between him and the officer of the bank as to his liability for the overdraft of the county treasurer, he is estopped to deny the affirmative of the first issue, if after such occurrences, the officer of the bank, reasonably believing *Page 83 
that plaintiff admitted his liability, acted upon such belief (116) to the damage of the bank, and the jury will answer `Yes' to the first issue."
The court, after calling the attention of the jury to the evidence that bore on the instruction of the defendant that was given, gave this instruction, to wit:
"If the jury believe that the plaintiff never authorized defendant bank to furnish money to M. L. Stevens, and denied his liability for money paid out upon the checks of said M. L. Stevens, and did not give the officer of the bank reasonable grounds to believe that he was liable for money paid out by it on checks of said M. L. Stevens, then the jury will answer the first issue, `No,'" and the defendant excepted.
There was a verdict and judgment for the plaintiff, and the defendant appealed.
The pleadings raised but one principal issue. The defendant, in its answer, admitted to be true the allegation of the complaint that the plaintiff had from time to time deposited money with it, aggregating the sum specified, and had drawn his check upon it, as alleged, for divers sums of money aggregating the sum specified, which were duly paid; but it denied that any balance was due to the plaintiff except the sum of $365.69, and alleged further, as matter of principal defense, that it had, at the request and by direction of the plaintiff and for his benefit, paid divers checks for money to the amount alleged, drawn upon it by M. L. Stevens, treasurer of the county of Union, leaving the balance admitted to be due. This the plaintiff denied, and thus was raised the material issue of fact. The other (117) issues submitted to the jury, and others proposed by the defendant but not submitted, were incidental — not necessary to be tried — and might have been omitted.
The first issue in order submitted to the jury, though not so precise and formal as it might have been, sufficiently embodied that raised as indicated. It embraced and presented fully the whole matter in dispute, and the parties on the trial of it could have produced all pertinent competent evidence. Under proper instructions from the court, the jury could readily have understood its meaning and merits and rendered a just verdict. If the allegation of the defendant was found to be true, then the balance due the plaintiff was the sum it admitted to be due to him; if it were found not to be true, then the plaintiff was entitled to judgment for *Page 84 
the sum demanded by the complaint. The first issue proposed by the defendant was not sufficiently direct — it would settle only a material incidental fact involved in the issue really raised by the pleadings. Moreover, the first issue submitted gave the defendant the largest opportunity to prove his alleged defense, and this was sufficient. The second, third, fifth and seventh issues proposed by the defendant were not raised by the pleadings, they had reference to matters not controverted; the fourth and sixth issues proposed were embraced by the fourth and fifth issues submitted to the jury. Merely incidental and immaterial issues ought not, ordinarily, to be submitted; they may, and oftentimes do, confuse or tend to confuse the jury, and when they do, this will be ground for a new trial, if proper objection is made in apt time. In this case, we cannot see that the defendant probably suffered prejudice by reason of the issues submitted. These were quite as pertinent as those proposed by it. The exception to the issues cannot, therefore, be sustained.
Much of the evidence produced on the trial was conflicting and indefinite. While parts of it tended to prove, as alleged by the defendant, that, at the request and by the direction of the plaintiff, it paid (118) checks drawn upon it by Stevens, treasurer, and he agreed to pay it for honoring such checks; there was also some evidence from which the jury might have inferred that the plaintiff promised to pay the defendant the sum of money advanced to Stevens, treasurer, on his own account, if he failed to do so. The plaintiff testified, among other things, that he never requested or directed the defendant to pay such checks, nor promised to pay it for doing so. There was evidence that, repeatedly, he was told by defendant's agents that it held him responsible on such account, and he did not deny his liability; that he said he would see Stevens, treasurer, and make him account, etc. It was also testified by the officers of the defendant "that there was nothing upon the books of the bank going to show any charge of Stevens' overdraft against Horne; that, according to the custom of their bank and by their usual methods of doing business, if the bank looked to Horne for any money advanced to Stevens, Horne ought to have been required to draw on the bank for the amount, and this check should have been charged to him and credited to Stevens; that even a depositor could not draw out his own money from the bank without giving his check for it, and that no money was paid out except upon the order of the president, unless a check was drawn or a note was made. This was not only the custom of their bank, but was a general custom with banks."
This, and like evidence, tending to prove that the defendant did not at first charge the plaintiff with the sums of money it paid in honoring the checks of Stevens, treasurer, but looked to him to repay the amounts so advanced to Stevens, treasurer, on his own account, if he failed to do *Page 85 
so, was not very strong, still the plaintiff might insist, as it seems he did, that if the jury believed from all the evidence he simply undertook to pay the debt of Stevens, treasurer, he would not be liable, because such undertaking and promise was not in writing, and (119) therefore void. The Code, sec. 1552. The first special instruction had reference to the aspect of the case presented by the evidence just referred to. It must be said that this instruction was vague and not very intelligible; still it can be seen that the purpose was to ask the court to instruct the jury that if they should find that the plaintiff promised and undertook to pay the debt of Stevens, treasurer, due to the defendant, if he failed to do so, then such agreement and promise would be void under the statute of frauds. As there was some evidence presenting such view of the case, the court might give the instruction, modified by what it added thereto. The addition was cautionary, and intended to prevent the jury from being misled — to tell them, in that connection, that if, on the contrary, the plaintiff was a principal in the debt created by the advancement of the money, along with Stevens, then he would be liable. Hence, the court said, in giving the instruction, "If the defendant bank, in making said advancements, trusted to one of the parties more than to the other, but did, in fact, trust to one, together with the other, the plaintiff would be liable," etc. The instruction, given simply as asked for, might have misled the jury, but, as modified and explained by the court, it was not misleading, certainly, taken in connection with the numerous instructions given at the request of the defendant. The second exception cannot, therefore, be sustained.
The third exception is clearly unfounded. The instruction must be taken in connection with the issue to which it refers. The whole of the evidence pertinent went to prove that, at the time the plaintiff received the note as mentioned in the issue, he made no agreement to pay the defendant the money it advanced to pay the checks drawn by Stevens, treasurer. Moreover, the evidence pertinent went to prove further that the defendant received the note from Stevens as collateral security after it was due, and the plaintiff had no notice or knowledge of (120) the fact that the defendant had it for any purpose until after he had paid and discharged the same. So that the defendant could not avail itself of the note for any purpose. The Code, sec. 177; Martin v.Richardson, 68 N.C. 255; Whedbee v. Riddick, 79 N.C. 521; Pugh v.Grant, 86 N.C. 39.
The defendant was not entitled to have the seventh special instruction asked for by it. What the plaintiff said on the occasion therein referred to was not a promise to pay the claim of the defendant, nor was it an admission that he was bound for the same, nor could the defendant reasonably act upon it as such promise or admission. Besides, what was *Page 86 
said must be taken in connection with other evidence going strongly to prove that the defendant's officers and agents well knew that the plaintiff denied his liability as claimed by it. Moreover, there was no evidence tending to prove that, after the occasion referred to, the defendant suffered any disadvantage or damage by reason of any reliance it placed on what the plaintiff said. After that time it surrendered the note mentioned to the plaintiff, but, for reasons already stated, it had no right to have or withhold it from him — he had paid and effectually discharged and was entitled to have it.
For the like reasons, the court properly declined to give the eighth special instruction asked for by the defendant. It might well have declined to do so, upon the ground that it had in substance given the seventh and eighth instructions in several prior special instructions asked for, which it granted without qualification.
The last instruction the court gave the jury was appropriate, certainly not objectionable — just after the numerous special instructions it had given at the request of the defendant's counsel. Indeed, having directed the attention of the jury to the view of the evidence contended for by the defendant, it fairly, in the same connection, directed their attention to the other view thereof contended for by the plaintiff. This was (121) fair and just. The defendant has no just ground of complaint at the court because of the instructions it gave or those which it refused to give. It gave, in substance, all the instructions the defendant asked for.
Affirmed.
Cited: Peele v. Powell, 156 N.C. 557; Whitehurst v. Padgett,157 N.C. 427.