ABIJAH LAWRENCE vs. BARNARD STRATTON & others.

A. conveyed land to B. and C. by a deed which was never recorded, and received back a mortgage of the same which was duly recorded, as security for a part of the purchase-money. It was then agreed between A., B., and D., that the deed from A. to B. and C., together with the notes and mortgage, should be given up and destroyed, and a new deed of the land made from A. to D. In pursuance of this agreement, the deed and notes were destroyed, and the mortgage given up to B., and a new deed of the land executed by A. to D., for the consideration of which the latter gave two notes, one to A. and the other to B. It did not appear whether C. knew of, or assented to, this arrangement. On a common writ of entry brought in this court by D. against B. and C., after the time allowed for the payment of the first instalment of the mortgage debt had expired, each party claimed the absolute title to the land. It was held, that the deed to D. conveyed a good title as against B., and as against C. also, if B. had authority to bind him by assenting to the deed to D.; that if B. had not such authority, then, as against C. the mortgage remained in force, and passed by A.'s conveyance to D.; and that in either case D. was entitled to judgment in this action for the whole land.

This was a writ of entry, tried before *Wilde*, J., on the plea that the tenants never disseized the demandant. The writ was dated March 27th, 1850. After the evidence had been introduced, the case was withdrawn from the jury by consent, and reported by the judge for the consideration of the whole court, who were to make such disposition thereof as they should think proper.

The case was as follows: — On the 23d of February, 1849, Alvarez Lawrence conveyed the demanded premises, by a deed which was never recorded, to the tenants, Barnard Stratton and Levi H. Stratton, who at the same time executed to the grantor a mortgage of the premises, which was duly recorded, to secure the payment of two notes given by them for a part of the price of the land, the first of which fell due on

the 1st of April, 1849, and no part of which had ever been paid.

On the 7th of July following, Barnard Stratton, in the presence of Alvarez Lawrence and Abijah Lawrence, stated to the scrivener by whom the instruments were drawn, that he had sold the estate to Abijah Lawrence, and wanted to know if the deed which he had taken could not be given up with the mortgage and destroyed, and a new deed made from Alvarez to Abijah Lawrence. The scrivener answered and advised that it might be done; and thereupon the deed of February 23d, 1849, from Alvarez Lawrence to the Strattons, was destroyed, together with the notes secured by the mortgage, and Alvarez made a deed of the demanded premises to Abijah Lawrence, the demandant, dated the 7th of July aforesaid, and recorded November 23d, 1849.

The mortgage was subsequently given up by Alvarez Lawrence to Barnard Stratton, who produced the same on notice at the trial. The demandant, Abijah Lawrence, for the consideration of the deed from Alvarez to him, made two notes, one to Alvarez Lawrence, and the other for the balance to Barnard Stratton.

Barnard Stratton went into possession of the premises under the deed to him and Levi H. Stratton, and remained in possession, by agreement with Abijah Lawrence, after the first deed was destroyed, and the second deed made. Levi H. Stratton, by a deed of quitclaim, dated on the 6th and recorded on the 7th of November, 1849, conveyed one half of the demanded premises to Palmer, one of the tenants.

The demandant relied on the deed to him from Alvarez Lawrence of July 7th, 1849. The tenants relied on the unrecorded and destroyed deed from Alvarez Lawrence to Barnard and Levi H. Stratton, of February 23d, 1849, and the deed from Levi H. Stratton to Palmer.

E. Washburn, for the demandant.

G. F. Farley and B. Russell, for the tenants. The demandant cannot recover in this action, either on the ground of an absolute title, or of a conditional title under the mortgage.

1. The destruction of the first deed revested no title in Alva-

rez Lawrence, and his subsequent deed to the demandant therefore passed no title. *Raynor* v. *Wilson*, 6 Hill, 469 and note, 472; *Chessman* v. *Whittemore*, 23 Pick. 231; *Mallory* v. *Stodder*, 6 Alab. 801; *Morgan* v. *Elam*, 4 Yerger, 375. Barnard Stratton, having assented to the second deed under a mistake as to the legal effect of the destruction of the first deed, is not thereby estopped. See *Owen* v. *Bartholomew*, 9 Pick. 520; Com. Dig., Estoppel, (E. 7.) Or if he is, such estoppel would not reach his co-tenant, who did not know of, or assent to, the arrangement. See *Brown* v. *Wood*, 17 Mass. 68; *Barnard* v. *Pope*, 14 Mass. 434; *Shumway* v. *Holbrook*, 1 Pick. 114.

2. This court, by force of the *St.* 1840, *c.* 87, § 1, has no original jurisdiction of a writ of entry to foreclose a mortgage. *Ingalls* v. *Richardson*, 3 Met. 340; *Waters* v. *Randall*, 6 Met. 479; *Blanchard* v. *Kimball*, 13 Met. 300.

SHAW, C. J. The first question is, whether by the transaction disclosed in the report, Abijah Lawrence acquired any title to the demanded premises. The case shows that Alvarez Lawrence by deed conveyed the premises to Barnard Stratton and Levi H. Stratton, and took back simultaneously a mortgage to secure a part of the purchase-money. This deed remained unrecorded for several months, when Barnard Stratton, having contracted to sell the estate to Abijah Lawrence, it was proposed to accomplish it in this mode: that the deed of Alvarez Lawrence to Barnard and Levi H. Stratton should be given up and cancelled, and that Abijah Lawrence should pay the debt of the Strattons by taking up and discharging their notes to Alvarez, which were secured by mortgage, and should account to them for the balance. This proposition was acceded to, and carried into effect accordingly. I shall treat the case at present, as if Barnard Stratton, who proposed this measure and carried it into effect, was the sole grantee under the deed from Alvarez Lawrence.

Upon carrying these measures into effect, by the execution of the deeds, the court are of opinion, that Abijah Lawrence acquired a good and indefeasible title.

It is very true, that the first deed from Alvarez Lawrence to Stratton vested the title in him, as against the grantor and his

heirs; and being an executed contract, the cancelling of the deed did not revest the title in the grantor.    It may be asked, if Alvarez had no title, how could he convey one to Abijah, by his deed, *non dat qui non habet?*    The answer, we think, will be found, in taking the whole proceeding together, and applying to it several rules of law, and provisions of the statutes of this commonwealth.    To take the case then by steps. The deed from Alvarez to Abijah Lawrence, under the agreement to cancel his former deed to Stratton, operated by way of estoppel, as against the grantor and his heirs, and *primâ facie* conveyed the title, he appearing by the registry to be the owner in fee.    This estoppel binds the grantor and his heirs.

Then how could a claim be made by anybody else ?    By the Rev. Sts. *c.* 59, § 1, it is provided, that conveyances of lands may be made by deed, executed by any person, &c., and acknowledged and recorded, as therein directed.    By this provision, if it stood alone, it would seem, that the prior deed from Alvarez Lawrence to Stratton passed nothing, because it was not recorded as well as executed and acknowledged. But this is varied by a subsequent provision of the same statute, § 28, which declares, that no bargain and sale, or other like conveyance of any estate, &c., shall be valid and effectual, against any person other than the grantor and his heirs and devisees, *and persons having actual notice thereof,* unless it be made by a deed recorded.    Under this clause, by a plain implication, it would be valid and effectual against the grantor and his heirs and devisees, and persons having actual notice. *It is* under the operation of this provision, that we stated above, that the first deed to Stratton, though not recorded, vested a fee, as against the grantor, by which Stratton became seized.

Then, coming back to the present case; Abijah Lawrence put his deed on record, and then, by the terms of the statute, Abijah Lawrence's deed, being first on record, must take precedence of all prior unrecorded deeds, made by the same grantor, unless there was some prior deed, of which the same grantee had actual notice, within the meaning of the statute, at the time of taking his subsequent deed.    The second deed, the deed to Abijah, is good against Alvarez, the grantor, his

heirs and devisees; then the only question is, whether it is good against the prior deed to Stratton, of which it is conceded Abijah had notice.

It may be useful to inquire a little into the origin of this exception, and the intent of the legislature in inserting it, in order to a true interpretation of its meaning. In the original registration acts, no such exception was made; but it was an exception engrafted upon them by judicial exposition. It was conceded, that the sole or at least the main object of the registration of deeds was to give constructive notice of such conveyances to purchasers and creditors, having a purpose to acquire title to an estate by conveyance or attachment; and, therefore, if a purchaser or creditor should attempt to acquire title to the estate by purchase or attachment, having actual notice of the prior deed, unrecorded, it would be a fraud upon the holder of such prior deed, to attempt to defeat it, by setting up his junior recorded deed; which the law would not allow, and so such notice was held to be an exception to the statute.

Such was the rule of law, and such the origin of it before the revised statutes. The rule was stated by Parsons, C. J., in regard to purchasers, in the case of *Norcross* v. *Widgery*, 2 Mass. 506, but more fully stated, and the provincial statute, on the preamble to which it was founded, cited and explained, by Sewall, J., in the case of *Dudley* v. *Sumner*, 5 Mass. 438. The same rule was extended and applied, but with some hesitation, to attaching creditors having notice of a junior unrecorded deed, and on the same ground, that of fraud; though such attachment might imply no fraud on the part of the debtor, but depended solely on the fraudulent purpose of the attaching creditor. *Priest* v. *Rice*, 1 Pick. 164. Indeed, this rule was uniformly adopted and acted upon, and put upon the ground, that a party with such notice could not take a deed without fraud; the objection was not to the nature of the conveyance, but to the honesty of the taker; and, therefore, if the estate had passed through such taker to a *bonâ fide* purchaser, without fraud, the conveyance was held valid. *Trull* v. *Bigelow*, 16 Mass. 406; *Dana* v. *Newhall*, 13 Mass. 498; *Coffin* v. *Ray*, 1 Met. 212; *Adams* v. *Cuddy*, 13 Pick. 460.

This was the settled law, when the revised statutes were compiled, and the commissioners in revising the former statute, and preparing the text of the code, used the same language. But the legislature, in acting upon the report of the commissioners, *c.* 59, § 27, added to the clause, providing that an unrecorded deed should not be valid against any person other than the "grantor and his heirs and devisees," the words, "and persons having actual notice thereof."

But the court are of opinion, that this clause was thus introduced into the text for more general and explicit information; not to change the law, but to declare it as it previously existed; and intended to accomplish the same object, to wit, to prevent the fraud which would be effected, if the taker of a junior deed, by first recording it, could defeat a prior, subsisting, and valid title, of which he had actual notice at the time. *Curtis* v. *Mundy,* 3 Met. 405.

Such being the intent and purpose of the law, the actual notice contemplated by the statute must be notice of some conveyance, on which the party knows or believes that a prior grantee relies, and under which he claims; otherwise the recording of the junior deed, and the claim of title under it, could not defeat the prior grantee, or deprive him of any benefit. If such prior grantee has consented to waive his claim, rescind his bargain, and cancel and annul his own deed, especially if he has received an equivalent for it, *volenti non fit injuria,* he cannot be defrauded by giving full effect to the junior deed.

To apply this principle more particularly to the present case. Stratton has an unrecorded deed from Alvarez Lawrence, and a title under it; he agrees to cancel his deed, and never record it; he receives a compensation from Abijah Lawrence equal to the value of the estate; he consents that Alvarez Lawrence may make a deed to Abijah, and that the latter may be first put on record; it is impossible that Stratton can be defrauded by it. The deed, thus agreed to be cancelled and never put on record, was the deed of which Abijah Lawrence had actual notice, accompanied with a knowledge of the facts above stated.

The demandant's title then stands thus; the grantor Alvarez, his heirs, and devisees, are estopped by his deed; *primâ facie,*

by force of the statute, his deed takes precedence of every un-recorded deed. If, under the exception in the statute, Stratton insists that Abijah had notice of his unrecorded deed, he may answer : — 1st. That at the same time he had notice of that deed, he had notice that it had been agreed by the parties in-terested, that it should be cancelled and not recorded, so that it was not an outstanding, valid, and subsisting deed, according to the statute; 2d. That this was done with the consent of Strat-ton, who was alone interested, and who received of the grantor a compensation, which he considered adequate to the value of his interest; 3d. That as against him, it could not operate as a fraud.

We have thus far considered the question, as if the act of Barnard Stratton, in proposing and carrying this agreement into effect, was the act of both himself and Levi. But if, as is suggested, Levi did not know of, or assent to, this arrange-ment, we cannot perceive how it would affect this case. The argument is, that he held under the deed of Alvarez Lawrence, as tenant in common, one undivided half of the premises; and that his co-tenant had no authority, merely as co-tenant, and without being thereto authorized by Levi, to part with the deed to his injury. Were his rights now in question, it might be requisite to have further proof upon this point of the au-thority of Barnard to act for Levi. But is it so ? It must be considered, that the arrangement proposed by Barnard Stratton, of giving up and cancelling the first deed, had for its object to pay the notes of Levi and Barnard Stratton in full, and dis-charge the mortgage given by them to Alvarez Lawrence, to secure payment of these notes as a part of the purchase-money. But if Levi should repudiate the transaction, and deny the au-thority of Barnard to act for him, he cannot repudiate it in part and affirm it in part. If he will not ratify the act of Bar-nard, in giving up the deed, then he cannot claim the discharge of the note and mortgage he had given to Alvarez Lawrence. So far as he was concerned the note and mortgage remained in force and Alvarez Lawrence was seized as mortgagee.

Then the warranty deed, given by Alvarez Lawrence to Abijah, would convey to the latter all the interest which Al

varez had under the mortgage, which was a conditional fee, and also an equitable assignment of all interest in the notes secured by it. This would be binding upon Levi H. Stratton, to the extent of his original liability, which was one half.

Upon the question, whether Abijah Lawrence can rely upon this title in this action, we are of opinion that he can. There are many cases, where a fee derived from a mortgage may be given in evidence, in a common writ of entry, not brought for foreclosure of a mortgage. And it is expressly provided by the Rev. Sts. c. 107, § 3, that the suit may be commenced, as in a common writ of entry, by the mortgagee counting on his own seizin without mentioning the mortgage; and if neither party moves for a conditional judgment, the judgment may be entered as in a common writ of entry. This action has now reached a late stage, and neither party has moved to enter the conditional judgment; and we think it would be too late to do so; on the contrary each party has claimed the absolute title.

We do not perceive how the entry of a judgment in common form can operate injuriously to Levi. If, as now insisted by his counsel, he is not bound by the act of Barnard, then his note is not paid, his interest is an equity of redemption, and notwithstanding the demandant is in possession under a judgment, he may bring his bill to redeem, if so entitled, within the time limited by law.

We are of opinion, therefore, that the demandant has a right to recover judgment for the demanded premises.