THE COMMERCIAL BANK OF DANVILLE v. W. H. S. BUR-
GWYN et al.

*Agency— Corporation—Notice—Fraud — Evidence — Negotiable
Instrument—Burden of Proof.*

1. A corporation is not bound by the acts or chargeable with the knowl-
edge of one of its officers or agents in respect to a transaction in
which such officer or agent is acting in his own behalf, and does
not act in any official or representative capacity.

2. When the maker of a note alleges fraud on the part of the payee in
in obtaining its execution, and offers proof tending to support that
fact, the *prima facie* case of an endorsee before maturity that he
took without notice is so far rebutted as to shift the burden on
him to show that he purchased for value and in good faith; but
when he has complied with this obligation, his *prima facie* case
is restored, unless the circumstances under which he took the
paper are such as to amount to constructive notice, when the bur-
den is again transferred to the defendant to establish knowledge
of the plaintiff of the vitiating facts.

3. Where it was shown that a director of a bank, and also one of its discount committee, conferred with the president of the bank in relation to discounting paper which such director held as president of another corporation, and that, after consideration with other officers—the applying director taking no part in the matter—the paper was discounted in the usual course of business : *Held*, not to constitute evidence sufficient to go to the jury of notice of an alleged fraudulent element in the paper discounted.

CIVIL ACTION, tried at Spring Term, 1891, of VANCE Superior Court, *Whitaker, J.*, presiding.

On the 14th day of June, 1888, the defendants executed the several negotiable notes sued on, due one year after date, to Ruffin, Hairston, and Ballou, who, in July following, endorsed them to the Southern Electric Light, Power and Construction Company, a Virginia corporation, of which one John F. Rison was president, and he was also at the same time one of the directors and discount committee of the plaintiff bank.

In September, 1888, the Southern Electric Light, Power and Construction Company borrowed from plaintiff $1,207.08 for sixty days, giving its note therefor, and also depositing the notes now in controversy as collateral, the loan was renewed at maturity, and when it became payable the second time—in January, 1889—the plaintiff discounted the notes deposited as collateral, and from the proceeds the note of the Electric Company was satisfied and the surplus paid to it. The notes so discounted were endorsed by said Rison as President of the Electric Company on the 25th of July, 1888, when they were first negotiated as collateral.

When the notes became due, payment was demanded and refused, and several actions thereon were begun, which were consolidated with this one.

The defendants alleged that the execution of the notes was procured by the false and fraudulent representations of Ruffin, Hairston and Ballou, the payees, by which they (defend-

ants) were cheated and defrauded, and which avoided the contract; and that the successive endorsements and transfers made to the Electric Company and to the plaintiff, were devices to deprive defendants of opportunity to avail themselves of these facts; and that, at any rate, Rison had notice of the vitiating circumstances as early as December 1888, and that he being one of the directors and discount committee of plaintiff, that fact fixed plaintiff with notice of all the circumstances of which he had knowledge.

The evidence as to whether Rison had notice of the alleged fraud was conflicting; but the plaintiff offered much uncontradicted testimony tending to show that Rison did not act in his capacity as a director or member of the discount committee of plaintiff when he negotiated and endorsed the notes; that there was a by-law of the plaintiff which forbade an officer of the bank to act on any paper in which he was personally interested; that the bank had no notice of the alleged fraudulent practice, but took the paper in good faith, in the regular course of business, before maturity, and paid full value therefor.

The following issue was submitted:

"Is the plaintiff the *bona fide* owner of the notes sued on, having obtained the same for value without notice and before maturity?" To which the jury responded, " No."

Among other things, the plaintiff requested his Honor to instruct the jury as follows:

3. That if the notes passed to the plaintiff for value and without any bad faith on its part, plaintiff must have a verdict.

4. That there is no evidence of bad faith on the part of plaintiff in acquiring said notes.

6. That the defendants must show in this case to the satisfaction of the jury that J. F. Rison when in Henderson in December, 1888, was acting as the authorized agent of the plaintiff, under its constitution and by-laws, and as such

that he was notified by the defendants that they would not pay their notes, or that they had offsets against the same, or else any knowledge which said Rison then acquired would not be notice to the plaintiff, and it must recover.

7. There is no evidence that said Rison was the authorized agent of said bank at said time, and hence said bank had no such notice as the law merchant contemplates to defeat a recovery in this action.

8. But even if the bank of Danville had any notice of any equity existing between the payers and payees of said notes when it bought the same, still if the Southern Electric Light Company had, previous to said time, owned said notes *bona fide*, and without such notice, and assigned same to the plaintiff, plaintiff will be and is such an innocent holder of said notes as will entitle him to a verdict in this case.

9. That if J. F. Rison, president, representing the Southern Electric Light Company, was at any time an innocent holder for value of the said notes and assigned them to the plaintiff for value, the plaintiff cannot be deprived of its right to recover.

10. That under all the circumstances of the case the Court should instruct the jury that there is a presumption of law that said Rison was such holder.

11. There is no evidence that the Southern Electric Light Company had any notice of any equity existing between the original parties to these notes.

13. That though there might have been fraud on the part of Ruffin, Hairston and Ballou in procuring the execution of the notes sued on, still there is not sufficient evidence in this case to go to the jury that the plaintiff is not the owner, and did not acquire said notes before maturity, without notice and for a valuable consideration.

14. If the jury believe, from the evidence, that at the time the plaintiff discounted the notes sued on, the same were presented to said bank by J. F. Rison for discount as presi-

dent of the Southern Electric Light Company, then, unless it is shown affirmatively that actual notice was given to said bank at that time, or prior thereto, of the defences of the makers against the payees, the plaintiff could still be an innocent holder of said notes without notice.

15. That if the director and vice-president of a bank, being also a member of the discount committee of said bank, procure the discount of a note which he holds as president of another company, and knows at the time of equities in favor of the makers against the payees, nothing else appearing, the law will presume that such person was not the agent of the bank, and that he did not make known his knowledge to said bank and the bank will be held an innocent holder.

Of the above instructions his Honor gave the 8th and 9th and all of the 15th, except the last line, and refused to submit the others, and the plaintiff excepted to the refusal to charge as requested.

Defendant asked his Honor to instruct the jury that if at the time said notes were discounted J. F. Rison acted upon the discount committee of the same with the president, and said Rison had notice that defendant claimed that said notes were executed by undue fraudulent representations of Ruffin, Hairston & Ballou, then plaintiff would be bound by said notice. His Honor gave the instruction and plaintiff excepted.

His Honor then charged the jury as follows:

"The notes sued on are negotiable, and there is a presumption of law in favor of the plaintiff that it is the owner of the notes, and that it took them for value and before dishonor. But fraud in the inception of the instrument is pleaded by the defendants, and they have introduced evidence tending to establish such plea. This having been done by the defendants, the *prima facie* case made by the plaintiff is so far rebutted as to shift the burden of proof and to make it necessary for the plaintiff to show that it is a *bona fide* purchaser for value before maturity, and without notice of

the rights of the defendants as against the payees, Ruffin, Hairston & Ballou. If the plaintiff has satisfied you by the preponderance of testimony that it became the *bona fide* purchaser for value of these notes before maturity and without notice of the equity or set-off of the defendants, then you will answer the issue submitted to you, Yes; otherwise you will say No.

"If you should find that J. F. Rison was a member of the plaintiff's discount committee, and as such acted in the purchase by plaintiff of these notes, then whatever knowledge Rison may have had of the defendants' rights is the knowledge of the plaintiff, and the plaintiff cannot recover."

Plaintiff excepted to the charge of his Honor as given, especially that he charged, if the jury should find that J. F. Rison was a member of the plaintiff's discount committee, and as such acted in the purchase by plaintiff of these notes sued on, then whatever knowledge Rison may have had of the defendant's equities is the knowledge of the plaintiff, and the plaintiff cannot recover.

Judgment for defendants, and plaintiff appealed.

*Messrs. J. W. Graham, John Devereux, Jr.,* and *A. W. Graham,* for plaintiff.
*Mr. S. F. Mordecai,* for defendants.

SHEPHERD, J.: The defendants having pleaded that the notes sued on were obtained by the fraudulent representations of the payees, and testimony having been introduced in support of such plea, his Honor was correct in holding that the *prima facie* case of the plaintiff endorsee was so far rebutted as to shift the burden of proof and to make it necessary for it to show that it was a *bona fide* purchaser for value and without notice. *Bank* v. *Burgwyn,* 108 N. C., 62; *Pugh* v. *Grant,* 86 N. C., 39. When, however, the plaintiff responded by showing that it acquired the notes *bona*

*fide* for value, in the usual course of business and while they were still current, the *prima facie* case of the plaintiff was restored, and unless the circumstances under which the purchase was made were of such a character as to amount to constructive notice, the jury should have been instructed that the burden of proof was upon the defendants to establish knowledge on the part of the plaintiff, at the time of its purchase, of the impeaching facts alleged in the answer. Daniel Neg. Instruments, § 819.

We are of the opinion that there is nothing in the testimony that amounted to such constructive notice. According to the testimony of J. F. Rison all of the notes were endorsed in July, 1888, to the Southern Electric Light, Power and Construction Company, and that the said company, through its president, the said J. F. Rison, endorsed them for value to the plaintiff some months before they were due. It is contended that the plaintiff was affected with any notice that could be imputed to the said Rison, because the latter was, at the time of the transaction, the vice-president and a director of the plaintiff and a member of its discount committee. It does not appear that Rison had any notice of the claim of the defendants until after the Burgwyn note had been discounted by the plaintiff; but conceding, for the purpose of the argument, that he had such notice at the time of the discounting of all of the notes, it is well established that the plaintiff cannot be affected therewith, unless Rison was acting in his official capacity for the plaintiff in the said discounting transactions.

" The foundation principle upon which rests the doctrine that a party, whether an individual or a corporation, is chargeable with notice imparted to his agents in the line of their duty, is that agents are presumed to communicate all such information to their principals because it is their duty so to do. The principal is conclusively presumed to know whatever his agent knows, if the latter knows it as agent. Of

110—18

course no such presumption can exist where the agent is dealing with the corporation in the particular transaction in his own behalf." So. Law Review, 816. In such transactions the attitude of the agent is one of hostility to the principal. He is dealing at arm's length, and it would be absurd to suppose that he would communicate to the principal any facts within his private knowledge affecting the subject of his dealing, unless it would be his duty to do so, if he were wholly unconnected with the principal. As was said by the Court in *Wickersham* v. *Chicago Zinc Co.*, 18 Kan., 481, "Neither the acts nor knowledge of an officer of a corporation will bind it in a matter in which the officer acts for himself and deals with the corporation as if he had no official relations with it;" or, as was said in *Barnes* v. *Trenton Gas Light Co.*, 27 N. J. Eq., 33, "His interest is opposed to that of the corporation, and the presumption is, not that he will communicate his knowledge of any secret infirmity of the title to the corporation, but that he will conceal it."

This doctrine has been applied to the case of a director procuring the discount of a note for his own benefit, having knowledge that it is founded upon an illegal consideration (*Bank* v. *Christopher*, 40 N. J. L., 435); or that it was made for his accommodation (*Bank* v. *Cunningham*, 24 Pick., 270); or that it was obtained upon a false pretense of having it discounted for the maker (*Washington* v. *Lewis*, 22 Pick., 24); or that it was affected in his hands with certain conditions (*Bank* v. *Leuceal*, 13 La., 525); or with a claim of recoupment of which the bank had no notice (*Loomis* v. *Bank*, 1 Dismey, 285); or with other equities (*Savings Bank* v. *Boston*, 124 Mass., 506). To the same effect are *Cocoran* v. *Snow Cattle Co.*, 151 Mass., 74; *Innerarity* v. *Bank*, 139 Mass., 332; *Stevenson* v. *Ray*, 26 Mich., 44; *Frost* v. *Belmont*, 6 Allen, 163, and other cases. In the foregoing decisions the director was not acting in his official character in the particular transaction; but had he been so acting, the bank, by a great

preponderance of authority, would have been affected with his knowledge. 1 Morse on Banks and Banking, 137, and authorities cited. The question, therefore, is, did Rison act as a member of the discount committee of the plaintiff, or in any other official capacity in respect to the discounting of these notes? He testifies that he told the president and cashier of the plaintiff that the Southern Electric Light, Power and Construction Company, of which he was the president, desired to have certain notes discounted; that he was informed that the plaintiff would let him know at one o'clock of that day; that he called at that hour and was told that the plaintiff would discount the paper. He also testified as follows: "The transaction, as before stated, between the bank on one side and myself as president and representing the Southern Electric Light, Power and Construction Company on the other, was transacted as any other business matter of like nature is done with the bank. I did not sit in the board during the consideration of the paper discounted. The bank paid value for said note without any notice to it of any set-off or counter-claim by said Burgwyn, and is to-day the absolute owner and controller of said note. I have not at any time represented the bank in the foregoing transaction, at the time named or since." He further testified that no director, interested in any way in any paper offered for discount, could, under the by-laws of the bank, or the laws of Virginia, participate in the deliberations of the discount committee in passing upon such paper.

The cashier of the plaintiff testified that "the transaction was in nowise different from any others carried on between the bank and its customers"; that it was in good faith, and that Rison was not present when the note was discounted.

The president testified that Rison "conferred" with him about the discount of the note, and submitted it to him for discount; that witness said that he would inform him during the day, and that he told the cashier to discount it after he

had made up his mind to do so.   He also stated that Rison was not present when the note was discounted, and that witness had no notice of the matters now pleaded by the defendants.   This, the only testimony upon the subject, very clearly shows that Rison was not acting for the plaintiff as its director or agent in any capacity in the discounting of the said paper, and this being so, it must follow that there was no constructive notice arising from the circumstances attending the transaction.   His Honor, therefore, should have instructed the jury, after the plaintiff had by its testimony restored its *prima facie* case, that the burden was on the defendants to show actual notice.   The failure to do this wss an error of which the plaintiff may justly complain. .

We are also of the opinion that there was no sufficient evidence of actual notice.   If there had been, the astute counsel for the defendants would undoubtedly have called it to our attention.   He could only refer us to the expression of the president to the effect that Rison " conferred with him " about the discount of the note.   Surely this was not sufficient to warrant the jury in finding actual notice of the matters of defence set up by the defendants.   Both the president and Rison explain what took place on the occasion. The note was submitted for discount, and Rison was to be informed later in the day of the action which the plaintiff had taken.   Both of them deny that the president had any notice; and it is very plain to us that testimony like this, which but barely raises even a conjecture in support of the view sought to be established, should not be submitted to the jury.   *March* v. *Verble,* 79 N. C., 19; *Wittkowsky* v. *Wasson,* 71 N. C., 451; *Brown* v. *Kinsey,* 81 N. C., 244; *State* v. *Waller,* 80 N. C., 401.   If such testimony is permitted to have the effect of rebutting the *prima facie* case of the holder of negotiable paper, the peculiar immunities incident to such obligations will be practically destroyed, and an incalculable damage inflicted upon the commercial world.

If, as we have seen, the *prima facie* case of the plaintiff was restored, the burden was on the defendant to prove notice in the plaintiff, yet the whole case was tried upon the theory that the burden was on the plaintiff to negative the existence of such notice. It must be apparent, therefore, that there was error in refusing at least some of the instructions prayed for. This is entirely manifest from the view we have taken that there was no sufficient testimony of actual notice.

Error.