## UHLER v. ADAMS.

EQUITY PRACTICE; PROPER PARTIES; ESTATES BY THE CURTESY;
JUDGMENT CREDITOR PROCEEDINGS.

1. The persons entitled to the reversion after the determination of an estate by the curtesy, are not proper parties defendant in a suit in equity to subject such estate to the payment of a judgment debt of the tenant by the curtesy.
2. Tenancy by the curtesy consummate has not been abolished in this District by R. S. D. C., Secs. 727 to 730, commonly known as the Married Women's Act; and when a married woman, who has had issue by her husband, dies without having disposed of her real estate either by will or by deed, the surviving husband is still entitled as at common law, to his tenancy by the curtesy.
3. The Married Women's Act in force in this District does not in its effect, exempt an estate by the curtesy from liability for the debts of the tenant by the curtesy.

No. 95.   Submitted October 9, 1893.—Decided November 7, 1893.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia, holding an equity term, dismissing a bill to subject an estate by the curtesy to the payment of a judgment debt. *Reversed.*

THE COURT in its opinion stated the case as follows:

This is a suit in equity instituted to subject an equitable tenancy by the curtesy to the satisfaction of a judgment at law.

The complainant, Alfred G. Uhler, as the surviving partner of a firm, Wimsatt & Uhler, is the owner of a judgment at law against the defendant, George F. Adams, for the sum of $363.42, with interest from December 15, 1883, and costs, for the payment of which it is alleged that Adams has no property subject to execution at law. It is stated, however, that the judgment debtor is the holder and owner of a life estate, in the shape of a tenancy by the curtesy, in a part of lot 14, in square 493, in the city of Washington, D. C., specifically described in the bill of complaint, to which he became entitled as the surviving husband of his wife, Rosanna

Adams, to whom he was married in the year 1857, and who died in 1890, seized in fee simple of the property in question, acquired by her in 1852 by devise from her father in part and in part by inheritance from her uncle, and leaving surviving her three children by the marriage, one son and two daughters, one of these a minor and both married, who are all made parties to the suit as defendants, owning the reversion of the property attendant upon the determination of the life estate.

It appears, also, that in the year 1872, the deceased, Rosanna Adams, and her husband joined in the execution of a deed of trust of the property to John M. Langston, as trustee, to secure to John H. Cook, a lawyer, the payment of a promissory note for $500, given to him, it is said, for professional services in connection with the property, performed or to be performed by him. Cook died in 1879, after having devised all his estate to his wife, whom he nominated also as executrix of his will. Both she and the trustee are made parties to the bill as defendants; and discovery is sought from her as to the note, which is alleged to have been given without good or valid consideration. The deed of trust, however, is outstanding, and is represented to be an obstruction to the complainant's enforcement of his judgment—although the note, if it ever was good, became due long ago, and is now barred by the Statute of Limitations. It appears that, prior to the institution of his suit, no proceedings whatever had been taken to enforce it, or to enforce the provisions of the deed of trust, notwithstanding that there had been administration of the estate of Cook.

Some time after the institution of this suit, however, and apparently with intent to forestall the result of it, directions were given on behalf of Cook's widow to the trustee, Langston, to sell under the deed of trust for default in the payment of the note. He did, accordingly, sell, and one Guggenheimer became the purchaser of the property at the sale. Upon the petition of Cook's widow, Guggenheimer was made a party to this suit; and he came in and answered, and

averred his willingness to comply with the terms of sale, with which he had not complied further than to make the deposit required by the advertisement of sale to be made with the trustee. It appears, also, that there was another deed of trust on the property, executed in 1891 by the two adult children of the then deceased Rosanna Adams, to secure the payment to Charles B. Church of a note for $300, the validity of which is not controverted, and no part of which has been paid Church, and the trustees in the deed to secure him are all made parties to the bill of complaint as defendants.

It appears, further, that, in 1877, the same Charles B. Church obtained a judgment at law against the defendant, George F. Adams, for $300 and costs; that, in 1891, this judgment was assigned by Church to George E. Adams, another of the defendants, and the son of George F. Adams and Rosanna Adams; that a writ of execution had been issued on it and returned unsatisfied; and that thereupon said George E. Adams filed his petition in this cause for leave to intervene as a complainant. The intervention was allowed. Subsequently, this judgment was assigned to one Block, who, also, on November 15, 1892, received from the three children of Rosanna Adams, a deed of conveyance of their reversionary interests in the property in question. Thereupon, on June 14, 1893, Block, on petition, was made a party to the suit as defendant.

Answers to the bill of complaint were filed by all the original defendants. The principal defendant, George F. Adams, while denying the complainant's right to enforce his judgment against the tenancy by the curtesy, admitted all the substantial facts alleged in the bill. With reference to the Cook note, he stated in his answer that it was given for professional services to be performed by Cook in clearing the title to the property in question from some flaws and clouds that were on it; that the services were never performed; that, therefore, the consideration for the note had utterly failed, and that the deed of trust to secure it was only an apparent and not a real lien.

Bell Marion Howard, Cook's widow, maintained the validity of the note given to Cook.

The two of the three reversioners, who were of age, expressed their consent to the sale of the property, and stated that by the failure of the life tenant, George F. Adams, to pay taxes and keep the property in repair, their interests were jeopardized. The usual formal answer was filed for the infant reversioner, Rose Gertrude Booth. This defendant's age is not specifically stated in the bill of complaint, as it should have been. But it would appear that since the institution of the suit she had reached her majority, inasmuch as she joined with her brother and sister in the deed of conveyance to Block, which has been mentioned.

Upon the hearing, after testimony taken, the Supreme Court of the District of Columbia, in special term, dismissed the bill, on the ground that under the so-called Married Women's Act, a tenancy by the curtesy is exempt from liability to creditors; and from the decree of dismissal the present appeal was taken to the General Term, whence it comes to this court under the law.

*Mr. William Twombly* for the appellant:

An estate by the curtesy is not exempt from liability to creditors under the Married Women's Act, R. S. D. C., Sec. 727. The evident object and intention of the statute is to confer certain rights upon a *feme covert* which she did not have before the passage of the act. These rights relate to her ownership and control of her property and to nothing else. No new limitations are created, no new incidents are established except those which relate personally to herself. The statute is silent as to the rights of any one else in regard to her property, as to its descent after her death, and in regard to everything, except the new rights vested by it in the married woman. The vested rights of the husband in property acquired by his wife before the passage of the act were not taken from him by it. *Hitz* v. *Bank*, 111 U. S., 577. Under the common law this estate or interest of the

husband's was liable for his debts, and so to say that it is exempt under that clause of the statute is equivalent to saying, that the act by implication continues to exempt this estate. But a well-established principle of common law is never repealed by implication. 2 Wait's Actions and Defenses, 286; *Hooper* v. *Mayor Balto.*, 12 Md., 464; *Keech* v. *B. & W. R. R. Co.*, 17 Md., 82. For authorities in support of appellant's construction of the statute, see 61 Law J. Ch., 441; L. R. (1892), 2 Chanc., 336; *Rice* v. *Hoffman*, 35 Md., 344; *Winkler* v. *Winkler*, 18 W. Va., 455; *Breeding* v. *Davis*, 77 Va., 639; *Lang* v. *Hitchcock*, 99 Ill., 550; *Prall* v. *Smith*, 2 Vroom (N. J.), 244; Wait's Actions and D., Vol. 3, p. 644.

*Mr. B. F. Leighton* and *Mr. George Francis Williams* for Sigmund J. Block:

Since the hearing of this cause below, the case of *Smith* v. *Smith*, and *Barrett* v. *Byrne* were decided by the Court in General Term. The court held that under the statute in force in this District, relative to the rights of married women, the husband continues to have his common law right as to curtesy, with the diminution that it is subject to be defeated by the wife's devise, or her conveyance in her lifetime. If the wife dies intestate, seized of the property, his right remains undisturbed, and he takes the estate. Washington Law Reporter, Vol. 21, No. 5. In *Campbell* v. *Morris*, 3 H. & McH., 535, the court said: "Every reason drawn from convenience points out the propriety of making all the property a man has liable for the payment of his honest debts." The statute of 5 George II., Chap. 7, is in force in the District of Columbia; by it, lands equally with personal property were liable to execution. *Hanson* v. *Barnes*, 3 G. & J., 221. Both authority and reason seem opposed to the exemption of this estate of the husband after the wife's death, from liability for his debts. The fact that the property in this case was acquired before the passage of the Married Women's Act strengthens this conclusion.

*Mr. Charles A. Elliott* for the appellee George F. Adams:

The property in question constituted the " sole and separate estate " of Mrs. Adams, and it is conceded by all parties, indeed, it is averred in the bill of complaint, that this defendant is seized of an estate by the curtesy, and we submit that such interest is not liable to the claims of creditors. Whatever may be the rule in the several States, established by decisions based upon the provisions of statutes peculiar to each State, the question is settled in this jurisdiction. The Married Women's act of April, 1869, which provides that the separate estate of a married woman as therein defined, shall not be subject to the control of the husband, *nor liable for his debts* " exempts his estate in the curtesy in her real estate from being taken for his debts contracted after the passage of the act." *Hitz* v. *Nat. Metropolitan Bank*, 111 U. S., 722.

*Mr. Franklin H. Mackey* and *Mr. W. H. H. Hart* for the appellees Langston and Howard.

Mr. Justice MORRIS delivered the opinion of the court:

We do not understand that there is any rule of equity procedure that would justify the introduction of the reversioners in this case as defendants to the bill of complaint. They have nothing to do with the case. Their estate is not subject to sale in any such proceeding as the present. The complainant's right, if any he has, is to reach the estate of the defendant, George F. Adams, which is confessedly no more than a life estate; but in doing this, he has no right to interfere in any manner with the estate of the reversioners. As to them, therefore, the bill of complaint was properly dismissed.

It appears, however, that two of the reversioners, who are of age, have concurred in their answers in requesting a sale of the whole property; and that one of the two has become the owner of a judgment against the principal defendant, George F. Adams, and has himself become a complain-

ant by petition for the enforcement of his judgment. But this action of the adults would not bind the interest of the infant reversioner. The infant, however, seems to have become of age since the commencement of the suit, and all three of the reversioners have united in a deed of conveyance of their reversionary interests to Sigmund J. Block, who has become a party to the suit as defendant. We are not informed by the printed record before us whether he has concurred in the request for a sale of the whole and entire estate in the property; but it may be assumed that such concurrence by him would operate to remove the objection to the introduction of the reversioners as parties to the suit.

Two principal questions are raised in the case:

1st. Did the act of Congress of April 10, 1869, commonly known as the Married Women's Act (Rev. Stat., U. S., for District of Columbia, Secs. 727 to 730), abolish in the District of Columbia the estate known as tenancy by the curtesy?

2d. If that act did not abolish tenancy by the curtesy, and that estate is yet in existence, did the act have the effect which is claimed for it of exempting it from liability to the claims of creditors?

With regard to the first question, the Supreme Court of the District of Columbia, in two recent cases, *Smith* v. *Smith*, and *Barrett* v. *Byrne*, 21 Wash. Law Reporter, 71, 75, has held that tenancy by the curtesy consummate, as it is called, has not been absolutely abolished by the act referred to; and that when a married woman, who has had children by her husband, dies without having disposed of her estate either by will or by deed, the surviving husband is still entitled, as at common law, to his tenancy by the curtesy for the term of his natural life. We think that this decision was entirely correct.

The statute does not purport by any express provision to abolish tenancy by the curtesy; and we do not find in it any provision that by necessary implication would have that effect. The act unquestionably gives the married

woman the power to destroy it, either by the conveyance of her estate by deed or by the devise of it in her will. But if she fails to use the power thus restored to her, and dies seized of the property and intestate, there seems to be no good reason why the well-established rules of law that direct the devolution of estates should not apply in this as in other cases.

By the common law, upon the death of a married woman, who has had children by her husband, two separate and distinct interests are carved out of her estate—one an estate for life in her surviving husband, the other a reversion in fee in her heirs. She may prevent either or both by her will or by her deed. She may dispose of the property as she pleases. But there would be just as much reason for supposing that the reversion in the heirs was abolished by the statute as the tenancy by the curtesy. Both are created equally by express provisions of the law; or at least both depend equally upon express provisions of the law for their recognition. And there is nothing either in the letter or the spirit of the Married Women's Act that requires us to consider as antagonistic to it the continued existence of the one any more than the continued existence of the other.

We presume no question would ever have been raised on this point, were it not for a casual expression, apparently to the contrary of this view, that occurs in the opinion of Mr. Justice Miller, speaking for the Supreme Court of the United States, in the case of *Hitz* v. *National Metropolitan Bank*, 111 U. S., 722. He says: " It was the purpose of the statute to abolish this tenancy by the curtesy, or any other interest of the husband, in all her property, and to place her in regard to it in the condition of a *feme sole.*" But that able and eminent jurist was speaking expressly of tenancy by the curtesy inchoate and the interest of a husband in his wife's estate at common law during the lifetime of the wife; and the context shows plainly that his statement as to the effect of the act must be confined to the husband's common law interests as affecting the wife's rights and powers and

control over her estate. It was undoubtedly the purpose of the statute to abolish all interest, power and estate of the husband that militated against the right of the wife to hold and dispose of her own estate as she thought proper. But certainly it cannot in reason be maintained that a married woman's right to her property is any the less absolute, because the law, after her death, makes provision for its disposal, when she herself has failed to make any disposition of it during her lifetime.

Statutes similar to our own have been enacted in nearly all, if not actually all, the States of our Union; and the general current of authority in their construction of their terms on this point are, we believe, almost unanimous. *Rice* v. *Hoffman*, 35 Md., 344; *Prall* v. *Smith*, 2 Vroom., N. J., 244; *Comer* v. *Chamberlain*, 6 Allen, 166; *Lang* v. *Hitchcock*, 99 Ill., 550; *Neely* v. *Lancaster*, 47 Ark., 175.

We have no hesitation, therefore, in holding in this case that the defendant, George F. Adams, was entitled to a life estate as tenant by the curtesy in the property of which his wife had died seized.

But it is contended, in the second place, that, even though the estate known as tenancy by the curtesy has not been abolished by the Married Women's Act, yet the effect of that act is to exempt it from liability to the demands of the husband's creditors. And in support of this contention the same case already referred to, *Hitz* v. *National Metropolitan Bank*, 111 U. S., 722, is cited.

We do not understand that case to have been so decided. In that case it was held that, besides the absolute right of property and power of control over her separate estate declared to be in the wife, the law intended to throw another safeguard over her property, and to provide that it should not be taken out of the husband's hands, or rather out of their joint possession, upon any pretence of reaching any estate of his in it, the purpose of the law being to destroy all his estate and interest, so far as his estate and interest antagonized in any manner her unqualified right of possession

or her absolute power of disposal. But that is not this case. There is no question here of a wife's estate, or of a wife's right of possession or power of disposal. The wife is dead. Her estate is gone. She is no more than a remote ancestor through whom the property has been derived. Her property may not be attacked in his hands during her lifetime; but what sense or reason is there in holding that, because property has once belonged to her, it, therefore, shall be exempt from liability for all time, or for any specified period of time after her death? Neither the policy nor the letter of the law requires that we should place so absurd a construction upon the statute; for it would be a most absurd construction to suppose that a statute, intended exclusively for the protection of the estates of married women from the control of their husbands, should be read so as to protect their husbands, for all after life, from the just claims of their creditors.

We are of opinion that the life estate of the defendant, George F. Adams, in the property derived to him from his wife is not exempt from liability for his debts.

There is another question in this case, the question of the validity of the deed of trust given to secure John H. Cook, which we do not deem it necessary to decide at this time, inasmuch as it may properly come up at a later stage of this case in an accounting before the auditor, when there will be an opportunity to take further testimony in regard to it.

From what we have stated, it follows that the life estate of the defendant, George F. Adams, in the property mentioned in the bill of complaint, ought to be subjected to the payment and satisfaction of the claims against him. We must, therefore, reverse the decree of the Supreme Court of the District of Columbia, in special term, and remand the cause to that court, with directions to enter a decree for the sale of that life estate, or for a sale of the entire interest, both life estate and reversion, if the defendant Block, as the owner of the reversion, will file his consent thereto in writing; and for such further proceedings in accordance with law as may

be just and proper. And it is so ordered, with costs to the complainant, to be taxed against the interests of the defendant, George F. Adams, in the premises.

And it is further ordered, that if the defendant Block will not consent, as provided, only the life estate of George F. Adams shall be sold; and the cause shall stand dismissed as against the reversioners and the said Block as their assignee.

*Reversed.*

A petition of the appellees John M. Langston and Bell Marion Howard for a rehearing, was denied. A petition of the appellee Simon Guggenheimer for a rehearing was also denied; but it was ordered by the court that if he would file a petition in the cause asking to be discharged from his purchase, he would be so discharged and dismissed from the cause upon its being remanded to the Supreme Court of the District of Columbia.