## AMERICAN EAGLE FIRE INS. CO. v. VAUGHAN et al.

Circuit Court of Appeals, Fourth Circuit. October 15, 1929.

No. 2876.

Stanley Winborne, of Murfreesboro, N. C., and P. W. McMullan, of Elizabeth City, N. C., for appellant.

D. C. Barnes, of Murfreesboro, N. C., and W. H. S. Burgwyn, of Jackson, N. C. (Burgwyn & Norfleet, of Jackson, N. C., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and SOPER, District Judge.

PARKER, Circuit Judge. This action was instituted in the court below by the trustees of a colored Baptist church to recover on a fire insurance policy issued by the American Eagle Fire Insurance Company on a church building and furniture. The company defended on the ground that the policy had been avoided by the procuring of other insurance and by false swearing in the proofs of loss. At the conclusion of the evidence, the trial judge excluded defendant's evidence relating to other insurance, denied motions for nonsuit and directed verdict, and held that the only issue for the jury was the value of the property destroyed. From a judgment on a verdict for plaintiffs, the defendant has appealed.

The facts may be briefly stated: The congregation of the church, at a meeting held May 10, 1924, authorized the taking of a policy of fire insurance on its property; and one Everett, the pastor, procured a policy from the defendant, which was duly reported to and approved by the congregation. This policy was renewed in 1925 and again in 1926; the last renewal being in June of the latter year. The property insured was destroyed by fire on December 27, 1926. There is no evidence that at that time the church or any one authorized to act in its behalf had procured any other insurance on the property. It does appear that the pastor, evidently for the purpose of perpetrating a fraud, but without the authority or knowledge of the congregation or the trustees, did procure additional insurance on the church property in September, 1926, from a different agent and from other companies than the one which issued the policy sued on. It does not appear, however, that either the congregation or its trustees ever learned of the existence of this insurance until after the fire occurred. Everett held the policies himself, paid the premiums out of his own pocket, and, after the fire occurred, attempted to collect the insurance for his own benefit. He succeeded in getting the checks in payment of these policies turned over to him, but later surrendered them upon the demand of the companies involved; the companies returning to him the premiums which he had paid. The policy sued on contained the usual provision to the effect that the company would not be liable for loss or damage occurring while the insured should have any other contract of insurance, unless agreed to in writing, which was not done.

After the fire occurred, a committee of three, consisting of Everett and two others, was appointed to collect the insurance money due the church. Everett took the other members of this committee to the agent who had issued the policies for the additional insurance to him, and had them join with him in executing proofs of loss thereunder. It appears, however, that in doing so they thought they were making proofs in connection with the insurance which was authorized. Everett alone executed the proofs under the policy which was authorized and which is sued on here. He evidently desired the co-operation of the committee in collecting the insurance of which he was to receive the benefit under his fraudulent scheme, and was afraid to have them make proof before two agents, lest they suspect that something was wrong. In the proofs which he made under the policy sued on he stated that the insured had no other insurance covering the property; and this is the false swearing upon which defendant relies.

We think that the evidence as to other insurance was properly excluded. It is true that such insurance had been procured by Everett upon the property covered by the policy in suit; but he had procured it in furtherance of his own fraudulent designs, and not as agent of the church. The mere fact that he was pastor of the church did not constitute him its general agent; and, while it is true that he was authorized to procure the policy of insurance which was renewed from time to time, and which is sued on here, this was an agency with respect

to a particular matter, and manifestly did not confer authority to take out additional insurance many months later. There is no evidence that the church ratified the procuring of this additional insurance or that it had any knowledge of its existence. The case therefore falls clearly within the rule that the clause of insurance policies forbidding the taking of other or additional insurance is not violated where one other than the insured procures a policy in the latter's name without his knowledge, acquiescence, or ratification. 14 R. C. L. 1137; 26 C. J. 260; Cooley's Briefs on Insurance (2d Ed.) vol. 3, p. 2856; Nelson v. Atlanta Home Ins. Co., 120 N. C. 302, 27 S. E. 38; Johnson v. North British, etc., Ins. Co., Fed. Cas. No. 7,400; Humble v. German Alliance Ins. Co., 85 Kan. 140, 116 P. 472, Ann. Cas. 1912D, 630 and note at page 632; note L. R. A. 1918D, 781; and see, also, Booth v. Concordia Fire Ins. Co. (C. C. A. 4th) 30 F.(2d) 20.

■ We attach no importance to the fact that the members of the committee appointed by the church to collect the insurance joined in making proofs of loss under the unauthorized policies. Their authority extended no further than to collect the insurance which had been effected under the authorization of the church; and the right of the church to this insurance clearly could not be jeopardized by any unauthorized action on their part in connection with other policies. Furthermore, it is clear that the members of the committee other than Everett thought that they were making proofs under the policy which was authorized. They so testified, their testimony is uncontradicted, and they are corroborated by the action of Everett in taking them to only one insurance agent to make the proofs of loss.

■ What we have said in connection with the exclusion of the evidence as to other insurance virtually disposes of the contention that a verdict should have been directed for defendant on the ground that the policy was avoided by the false swearing of Everett in the proofs of loss. The statement that the church had no other policies of insurance covering the property was literally true. Policies had been issued, as we have seen, on the unauthorized application of Everett; but they were held by Everett and not by the church. The church had not obtained them and had no rights under them or notice that they existed. Everett knew of them, but this knowledge came to him, not as agent of the church, but in the carrying out of his own fraudulent scheme, and is consequently not imputable to the church. See Commercial Bank of Danville v. Burgwyn, 110 N. C. 267, 14 S. E. 623, 17 L. R. A. 326. It is true that the ordinary rule is that false swearing by an agent authorized to make proofs of loss will defeat the rights of the insured under the policy, even though the insured be innocent (see 26 C. J. 386); but in this case there was no false swearing on the part of the agent, for the statement that the church had no other policies of insurance on the property was true.

It was argued that the motion to nonsuit should have been allowed on the ground that all of the trustees of the church were not made parties plaintiff to the action; but this contention is entirely lacking in merit. Two trustees and three deacons of the church were named as plaintiffs in the original summons and complaint; and on the trial of the case an order was entered allowing other persons shown by the evidence to be trustees to be added as plaintiffs. Defendant contends that there were other trustees who were not made parties; but we think that the evidence to the contrary was conclusive. Certainly it was abundantly sufficient to establish the contrary. In view of this, we need not stop to inquire whether failure to join one or more of the trustees in such a case would constitute ground for a motion to nonsuit.

There was no error, and the judgment of the District Court will be affirmed.

Affirmed.